# UNDERWOOD *vs.* SCHOOL TOWNSHIP 16, RANGE 27.

[SUMMARY PROCEEDING AGAINST DEFAULTING SCHOOL SUPERINTENDENT.]

1. *Summary proceeding not sustained.*—The 6th section of the 4th article of the school-law of 1856, (Session Acts 1855-6, p. 44,) which provides that, if a county superintendent fails to pay over according to law the money in his hands, " he shall be liable to the penalties set forth in section 382 of the Code of Alabama against treasurers who fail to pay over school-funds," does not authorize a summary remedy against him and the sureties on his bond.

2. *Rights and duties of trustees.*—The 5th section of the 4th article of said act, requiring the county superintendent to pay over the funds in his hands on the application of the trustees, "*provided* they have discharged the duties, and at the time appointed, as prescribed in article 2, section 13, and not otherwise," imposes no disability on trustees who have duly discharged all their duties, on account of the failure of their predecessors to comply with all the requirements of the law.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. ROBERT DOUGHERTY.

THIS proceeding was commenced by notice and motion for a summary judgment, against William J. Underwood, and the sureties on his official bond, as school superintendent of the county of Russell, on account of his failure to pay over to the trustees of the township, on their demand, a balance of $261 14 of the funds in his hands to which the township was entitled. The defendants moved to dismiss the proceeding, "on the ground that there was no law authorizing the same," and reserved an exception to the overruling of their motion.

The material facts disclosed on the trial, as stated in the bill of exceptions, are these: Said William J. Underwood was duly elected county superintendent on the 5th May, 1856, but failed to give bond as required by law; and having been then appointed by the probate judge to fill the vacancy in the office, he gave bond on the 11th August, 1856, with the other defendants as his sureties; the condition of the bond reciting these facts. No election for trustees of the township was held on the second Monday in May, 1856, the time appointed by law for said election to take place; and the said Underwood, as county superintendent, thereupon appointed three trustees, all of whom, however, refused to act. In April, 1857, Underwood was required, on the petition of his sureties, to give a new bond, which he refused to do, but resigned his office; and one L. W. Martin was then appointed by the probate judge to fill the office for the unexpired term. Said Martin afterwards appointed three trustees for the township, who, on the 29th September, 1857, returned to him a report showing the number of children in the township, and, in January, 1858, (prior to the 15th day of the

month,) another report showing the "school operations" of the township for the year 1857. In February, 1858, these trustees demanded of said Underwood the balance of the funds in his hands belonging to the township, which he had received from the tax-collector of the county, in November, 1856; and he failed to pay it over to them. On these facts, the court rendered judgment against the defendants; to which decision they reserved an exception.

The rendition of judgment against the defendants, the overruling of their motion to dismiss the proceeding, and several rulings of the court on questions of evidence, are now assigned as error.

CLOPTON & LIGON, for the appellants.—1. There is no express statutory provision authorizing a summary remedy in such a case as this, and the proviso to the 6th section of the 4th article of the school-law of 1856, making a defaulting superintendent liable "to the *penalties* set forth in section 382 of the Code," &c., does not give a summary remedy.—Sample v. Royall, 4 Ala. 344.

2. The 5th section of the 4th article of said law requires the county superintendent to pay over funds on the application of the trustees, "provided they have discharged the duties, and at the times appointed," &c., "and not otherwise." These duties and times, as specified in the 13th section, are—1st, to make a report of the number of children, &c., during the month of September of each year; and, 2d, to make a report of school operations by the 15th January of each year. Unless these duties were performed by the trustees at the time specified, the superintendent is not authorized to pay over money to them, nor would a payment to them discharge him from liability. The money here sued for is a balance due for the year 1856, which the trustees were not entitled to demand in 1858, because no report whatever had been made for the year 1856.—8 Porter, 104; 9 Porter; 423.

L. W. MARTIN, with WM. P. & T. G. CHILTON, *contra*. 1. Liability to a statutory *penalty* includes liability to the

remedy by which that penalty is enforced, as is shown by the very case cited by the appellants' counsel. This construction of the statute accords with public policy, as well as with the clear intention of the legislature.

2. The failure of the trustees of 1856 to perform their duties can impose no disabilities on the trustees of 1857, who have duly complied with all the requirements of the law.

STONE, J.—Section 6, article IV, of the act "to render more efficient the system of free public schools in the State of Alabama," (Pamph. Acts of 1855-6, p. 44,) reads as follows: "That the county superintendent must promptly pay over the money in his hands, according to the provisions of this act; and, failing to do so, he shall be liable to the penalties set forth in section 382 of the Code of Alabama, against treasurers who fail to pay over school funds."

Under this section, we are asked to sanction the application of a *summary remedy* against the superintendent and his *sureties*, on his bond. The word *penalties* is not comprehensive enough to embrace the *measure* of recovery, the *form* of proceeding for its enforcement, and *persons* not otherwise named, against whom to render the judgment. It certainly could not be successfully asserted, that a summary remedy, and that against sureties, is furnished by the words, "*he* shall be liable to the penalties."

What we have said above is decisive of this proceeding.

[2.] In a future suit it may become a material inquiry, whether a performance by the trustees, of all the duties enjoined by section 13, article II, of the act we are considering, is a condition precedent to their right to proceed against a county superintendent under section 6, article IV. There is nothing in the language of section 5, article IV, which makes the right of trustees to demand and receive moneys due to their township to depend on the performance of duties anterior to the date of their appointment. Without announcing at this time what would be our decision, if trustees failed for a time to perform the duties enjoined upon them, and afterwards

did comply with the requirements of section 13, article II, it is obvious that, if trustees, from and after their election or appointment, *discharge their duties, and at the time appointed,* section 5 of article IV imposes no disabilities on them. We have laid down this rule, because cases may arise where there is a temporary vacancy in the office of trustee, or the acting trustees may be derelict in duty. Such vacancy or dereliction can oppose no obstacle to subsequent trustees, who *discharge* their duties. From the facts recited, we suppose this principle is applicable to the default here complained of.

Judgment of the circuit court reversed, and the cause remanded.