ALICE PARISH ET AL. V. H. F. ALSTON, EX'R, ETC.

(Case No. 1757).

1. LIMITATION — GUARDIAN AND WARD — TRUSTS — DISABILITIES — In 1859, A. qualified as guardian of the person and estate of M., his grand-daughter, then only four years old, and at once took possession of her estate, which consisted of unimproved lands, seventeen slaves, and other personal property. Shortly afterwards, A. converted into money the whole estate, except the slaves, whose use he had until their emancipation in 1865, and whose yearly hire was worth $1,100, realizing therefor about $10,000. After the death of her parents in 1858, M. lived with her guardian until April, 1872, when she married P. and changed her place of residence. Subsequently to M.'s marriage, A. paid her $1,000 and conveyed to her two city lots worth $2,000, which was all she ever received from her estate. A. died in 1879, possessed of a large estate and leaving a will, but without having settled with his ward or having filed a final account of his guardianship ; and soon thereafter his will was admitted to probate, H. qualifying as executor thereunder. In a suit instituted Sept. 16, 1881, by M. and P. against A.'s executor for balance due her from A. as her guardian, and not accounted for. *Held:*

(1) That the plaintiff's claim was barred by limitation.

(2) That the ward's marriage, by the terms of the statute then in force (Pasch. Dig., art. 6928), put an end to the guardianship, and made her, in legal contemplation, of full age, though in fact a minor. (Citing Thompson vs. Craig, 24 Tex., 582).

(3) That the relation of trustee and *cestui que trust* between the guardian and his ward depended for its existence entirely upon the existence of the guardianship, and ended with the termination of the latter.

(4) That the waste and conversion complained of in the petition having occurred during the existence of the guardianship, the ward's cause of action then accrued, and limitation began to run from the date of her marriage.

(5) That one disability cannot be connected with another for the purpose of extending the period of limitation.

2. NOTICE — PROBATE RECORDS — GUARDIAN AND WARD — In a suit against a guardian by his ward for waste and conversion of the latter's estate, the ward will be charged with a knowledge of all such facts relating thereto as are disclosed by the records of the probate court in which the guardianship is being conducted.

4. FRAUD — CONCEALMENT — PLEADING — See the statement of this case for a petition held, on special demurrer, not to show such concealment of the fraud charged therein as would arrest the running of the statute of limitation.

APPEAL from Houston. Tried below before the Hon. John R. Kennard.

Appellant, Mrs. Parish, joined ¦by her husband, instituted this suit against appellee, as executor of Philip Alston, deceased, to recover amounts claimed to be due her by Philip Alston as her guardian.

The original petition was filed September 16, 1881. The guardian qualified in 1858 or 1859, when his ward was only two or three years old, and she lived in his family until her marriage in April, 1872, at the age of seventeen years. She was the grand-daughter of her guar-

dian. He died in May, 1879, without having settled with his ward or filed any final account.

The petition alleged that Mrs. Parish's mother died in August, 1856, and her father in March, 1858; that administration was opened by her father on the estate of her mother, who left considerable property, and after his death, the administration was continued by an administrator *de bonis non*; that her father left a will, in which he appointed Philip Alston executor of his estate and guardian of appellant, who was sole legatee, she being the only child; that the executor duly qualified and administered the estate, and, before the close of the administration, qualified as guardian of the person and estate of appellant; that, as guardian of her estate, he received from the administrator *de bonis non* of her mother's estate and from himself as executor a large amount of property, consisting of money, lands in Rusk county, seventeen negro slaves, notes and accounts; that, in his inventory filed June, 1860, the guardian reported on hand net $3,394.00, and also a large number of claims on solvent persons amounting to $1,289.53, besides interest, which claims he collected, or could have collected by the use of reasonable diligence; that he also received, as such guardian, three notes given for the land in Rusk county, belonging to her mother's estate, aggregating $3,720, payable in one, two and three years, and drawing ten per cent. interest from their date, which notes he failed to report; that without the authority of the county court and against the interest of his ward, he accepted $2,500, in October, 1865, in full discharge of the notes, being about half their principal and interest, although the makers of the notes were, and continued, solvent, and that he appropriated to his own use the $2,500; that the guardian had possession and control and use of the seventeen slaves from 1857 till the close of the war, using some of them on his own plantation and hiring others out, and that he failed to account for the value of the use and hire of the slaves after 1858, the value of which use and hire is alleged at $1,100 per annum; that the guardian, in an exhibit filed by him in 1856, reported that he had bought for his ward nine hundred and thirty-six acres of land adjoining his plantation, for which he claimed to have paid $10 per acre, and accordingly charged her estate with $9,360 therefor, while, in fact, he paid only $1,800 for the land; that such purchase was made without any order of court and was against the interest of the ward; that the title to the land so purchased was taken in the individual name of the guardian; that after her marriage, appellant was told by her guardian that the land was her property and had been bought by him for her, and proposed to her to convey

to her, in exchange for the same, two lots in Galveston of the value of about $2,000, which proposition she accepted August 10, 1877, and conveyances were exchanged accordingly; that appellant did not know that her guardian had charged her estate $9,360 for the land until after his death; that the guardian had told her that all the records and papers connected with the guardianship had been destroyed at the time of the burning of the court house of Houston county, where the guardianship was opened; that the land was culti-vated by the guardian, and he never accounted for any rents, etc.; that the guardian paid her $1,000 on the day after her marriage, and she has received nothing else from her estate, except the lots in Galveston.

The petition also shows that the appellant's father and mother lived in Rusk county, and that after their death she was removed to her guardian's residence in Houston county.

It is alleged that the guardian died May 13, 1879, having never fully executed the trust; that he had not been discharged by the county court and had never settled the estate; that the guardianship remained open and unsettled; that her estate in his hands was a subsisting continuing trust, and so acknowledged by him up to the time of his death.

Appellant prayed for a full accounting and settlement of her estate, and for judgment against her guardian's estate for the amounts due her, etc.

In the trial amendment appellant alleged that she had no knowledge whatever of the purchase of the nine hundred and thirty-six acres of land at $10.00 per acre until long after her marriage; that upon her marriage she removed to Walker county, the residence of her husband, and that she has since resided there; that her guardian resided in Houston county up to the time of his death; that in 1865 the court house, with the records of Houston county, was destroyed by fire, and her guardian represented to her that all the records and papers pertaining to the guardianship were then destroyed, which she believed, as also her guardian's representation that he paid only $1,800 for the land; that she did not discover that such rep-resentations were untrue until after his death, when she ascertained that the probate minutes and a portion of the records containing exhibits of the estate had not been destroyed; and that the exhibits show that the guardian reported that he paid $9,360 for the land and was allowed credit for that amount.

Appellee demurred to the petition, on the ground that the cause of action, as asserted, appeared to be barred by limitation, and to

be stale. He also pleaded the general denial. Upon the trial, the special exceptions were sustained and the petition was dismissed. It is claimed that the court erred in sustaining the exceptions and in dismissing the suit.

*James A. Baker, L. A. Abercrombie* and *J. R. Burnett*, for appellants, on limitation and laches, cited: Hunter v. Hubbard, 26 Tex., 546; Perry on Trusts, vol. 2, sec. 863; Wait's Acts, and Def., vol. 7, p. 240; Taylor et rex., v. Kilgore, 33 Ala., 214; Alston v. Alston, 34 Ala., 16; Caplinger v. Stokes, Meigs (Tenn.), 175; Const. of 1870, art. 12, sec. 14; Pas. Ann. Dig., vol. 2, arts. 6929 and 5578; Laws of 1876, p. 178, sec. 46; Perry on Trusts, vol. 2, sec. 850; Connolly v. Hammond, 51 Tex., 648; Carlisle v. Hart, 27 Tex., 350.

*Nunn, Williams & Corry*, for appellee, that the allegations of the petition were not sufficiently certain or specific, cited: Muns v. Mitchell, 1 Tex., 446; Caldwell v. Haley, 3 Tex., 318; Catlin v. Glover, 4 Tex., 151; Chitty Pleading, vol. 1, p. 483; McKnight v. Taylor, 1 Howard, 161; Clarke v. Brooman, 18 Wall., 493. On limitation and stale demand, they cited: Pas. Ann. Dig., art. 4640; White v. Latimer, 12 Tex., 61; Thompson v. Cragg, 24 Tex., 598; Burr v. Wilson, 18 Tex., 376; Angell on Lim., 169; Bull v. Towson, 4 Watts & S., 557; Green, exr., v. Johnson, 3 Gill & J. (Md.), 389; Ford v. Clements, 13 Tex., 592; Collins, exr., v. Warren, Galv. Term, 1883; Tinnan v. Mebane, 10 Tex., 254; Hunter v. Hubbard, 26 Tex., 546; Angell on Lim. p. 162; secs. 171, 174; McKnight v. Taylor, 1 How., 161; Perry on Trusts, vol. 2, 866, 869.

WATTS, J. COMM. APP.—By the terms of the statute then in force, the marriage of appellant, Alice Parish, terminated the guardianship. Pas. Dig., art. 6928. It also rendered her, in legal contemplation, of full age, although a minor. Thompson v. Craig, 24 Tex., 582.

From the allegations in the petition, it appears that the acts of waste, conversion, etc., complained of, occurred prior to the marriage. In other words, the cause of action accrued to her during the guardianship. A suit for the waste, conversion, etc., might have been maintained against Phillip Alston, the guardian, at any time after these things occurred. But, for two reasons, no limitation would run against Mrs. Parish, prior to her marriage, for failure to bring the suit. She was then laboring under the disability of nonage, which would protect her against the operation of the statute of limitation. Besides, the relation of trustee and *cestui que trust* of an express trust

existed between the guardian and ward, which had the same effect.

As has been seen, the marriage terminated the disability of infancy, but appellants claim that the trust relation continued notwithstanding the marriage. That position can hardly be maintained, for if the marriage terminated the guardianship, and of that there can be no doubt, it certainly terminated the trust relation theretofore existing between the parties. Mr. Wood, in his work on Limitation of Actions, sec. 204, says: "The better rule seems to be that the statute begins to run from the termination of the guardianship, except in cases where the cause of action arises from matters occurring after the guardianship has ceased."

In Alston v. Alston, 34 Ala., 29, it is said: "The statute of limitations could not commence running against the complainant until the termination of the guardianship." See also Taylor v. Killgore, 33 Ala., 214; Eiland v. Chandler, 8 Ala., 781. Upon the termination of guardianship the ward would be entitled to the property, and the guardian, whose office had ceased, would have no right to retain it as against the ward. The relation of trustee and *cestui que trust* of an express trust no longer existed between them. The existence of that relation depended entirely upon the existence of the guardianship, for it is not alleged that this relation was either created or continued by contract. So that when the guardianship terminated, if the guardian then failed or refused to deliver the property, money and credits to Mrs. Parish, a cause of action would then accrue. R. S., art. 3222.

As it is alleged that the acts of waste, conversion, etc., occurred during the existence of the guardianship, a cause of action accrued, but no limitation ran, during the existence of the guardianship, because Mrs. Parish was then a minor. When she married, however, that disability ceased. The act which terminated that imposed another disability, viz., coverture, to which, if asserted as a protection against the statute, it might be replied that the cause of action accrued while she was a minor, and that one disability cannot be connected with another for the purpose of extending the period of limitation. R. S., art. 3225.

There are no such allegations of the concealment of the fraud charged against Phillip Alston as would arrest the running of the statute. It does not appear but that the facts could have been ascertained by appellants by the use of reasonable diligence. On the contrary, the allegations are such as to indicate that, by the exercise of slight care, all the facts might have been known to them at the termination of the guardianship. If, as charged, the minute book of

the probate court, which was saved from the fire, disclosed the facts alleged in the petition, then no reason is perceived why they should not be chargeable with a knowledge of all the facts disclosed by the record. Upon an examination of the entire record, we are of the opinion that there is no error in the judgment, and that it ought to be affirmed.

AFFIRMED.

[Opinion adopted December 18, 1885.]