### GRANVILLE ALLEN ET AL. v. J. B. STOVALL ET AL.

#### No. 1026.   Decided June 28, 1901.

**1.  Guardian's Bond—Joint Obligation—Statute—Representative.**

The heirs of a surety upon a guardian's bond joint but not several in form were liable as though the ancestor's obligation were several as well as joint by virtue of the Act of 1840, section 5, page 73, in force when the bond was given, though afterwards repealed by the Revised Statutes of 1879; the word "representative," as used in such act, includes both real and personal representatives as known to the common law and renders the heir liable as well as the administrator. (Pp. 627-629.)

**2.  Guardian—Disputing Right of Ward.**

The guardian is not permitted to dispute the right of his ward to property coming into his possession as guardian (Revised Statutes, article 2632), and, with his sureties, is liable for money received in compromise of a suit to recover their real estate, though the compromise was unauthorized. (P. 629.)

**3.  Limitation—Action on Guardian's Bond.**

Action upon a guardian's bond is barred only in four years from the death, resignation, removal, or discharge of the guardian (Revised Statutes, article 3357); limitation does not commence to run against the ward on the relation ceasing by his attaining majority or on the marriage of a female ward, where the guardian has never settled or been discharged. (Pp. 629, 630.)

**4. Same—Cases Distinguished, Overruled, Etc.**

Timmins v. Bonner, 58 Texas, 555, and Parish v. Alston, 65 Texas, 198, distinguished from Marlow v. Lacy, 68 Texas, 154. Read v. Henderson, 57 Southwestern Reporter, 78, on question of limitation, disapproved, and refusal of writ of error therein explained. (P. 630.)

**5. Guardian—Credits—Maintenance of Ward.**

Where the estate of the wards yielded no income, the guardian was not entitled to credit for expenditures in their maintenance incurred without authority of an order of the court. (P. 631.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

Allen and others sued Bast and others and recovered against all the defendants except the heirs of Reed, a deceased surety on the guardian's bond sued on. From this plaintiffs appealed, appellees assigning cross errors. The judgment was affirmed in part and in part reversed and rendered and both sides obtained writ of error.

The portion of the opinion of the Court of Civil Appeals relating to the guardian's claim for expenses in maintenance of his wards was as follows:

"In regard to the cross-assignments of error, the facts are that until 1890 the estate of the minors consisted of this land, which afforded no revenue. In 1890 the property took the form of money in the sum of $5000, for which the guardian rendered no account, and which he appropriated. As to the charges of expenses he was at in providing for and maintaining his children (his wards) from 1879 to 1890, he was in no position, without an order authorizing it, to set off his expenditures for such purposes, there having been no income. Blackwood v. Blackwood, 92 Texas, 478; Read v. Henderson, 57 S. W. Rep., 78; Smythe v. Lumpkin, 62 Texas, 243."

Motion to correct the opinion so that it should state that the judgment recovered is to be a charge against the estate of J. C. Reed in the hands of his heirs was filed on behalf of plaintiffs in error Granville Allen et al. Judgment was so rendered in the original opinion, the motion to correct being refused as per opinion thereon.

*Gano & Gano* and *George Titterington*, for plaintiffs in error Granville Allen et al.—The court erred in rendering judgment in favor of defendants R. B. Harston and wife Emma Harston, and J. B. Stovall and wife Bessie Stovall, and in holding that the land (i. e., the estate of J. C. Reed) inherited by the defendants Bessie Stovall and Emma Harston from their father J. C. Reed, and now in the possession of said defendants, is not liable for the payment of plaintiffs' claim.

The common law rule is that when a surety on a joint and several bond dies his estate is charged with the payment of such obligation. Bish. on Con., secs. 863-866. From 1840 down to the adoption of the Revised Statutes in September, 1879, a bond, joint in form, was in force, substance, and effect a joint and several bond; the law (Hartley's Digest, article 635) expressly held the estate of a deceased

surety upon a joint bond charged with the obligation of said bond and liable for its payment. Hart. Dig., art. 635; Boyd v. Bell, 69 Texas, 738; Mays v. Cockrum, 57 Texas, 353; Bergstroem v. State, 58 Texas, 95; Glasscock v. Hamilton, 62 Texas, 150; Eastland v. Lester, 15 Texas, 101.

The estate of a deceased surety on any obligation, whether joint or several, descends to the heirs and representatives of such deceased surety, subject to the payment and satisfaction of such obligation. Rev. Stats., art. 1869; Blinn v. McDonald, 92 Texas, 604; Moore v. Moore, 89 Texas, 33; Northcraft v. Oliver, 74 Texas, 167.

The word debt in article 1869 of the Revised Statutes is used in its general sense. Its evident meaning is to include all obligations to pay money, whether arising from a contract or implied by law as a compensation for damages, by reason of a breach of contract. The word debt denotes that which one person is bound to pay to or perform for another. Barber v. East Dallas, 83 Texas, 150; 8 Am. and Eng. Enc. of Law, 2 ed., 983; Bank v. Fuchs, 89 Texas, 197; Cole v. Aune, 40 Minn., 80; Blinn v. McDonald, 92 Texas, 604; 1 Pars. on Con., 3 ed., chap. 2 (a debt may result from a joint obligation, as from one joint and several).

The estate of a deceased surety is liable for a default of the guardian although such default occurred after the death of the surety. An official bond is a continuing obligation by which the surety binds himself and his estate to stand for the faithful performance of all the principal's duties. Brandt on Suretyship, sec. 133; Glasscock v. Hamilton, 62 Texas, 143; Voris v. State, 47 Ind., 345; Cotton v. State, 64 Ind., 573; 9 Am. and Eng. Enc. of Law, 137, and note; Sargent v. Wallace, 67 Texas, 487; Douglass v. Ferris, 18 N. Y. Supp., 685.

The county court has authority in cases of guardianship to order and authorize a compromise of all suits, when a compromise is shown to be necessary:

(1) The Constitution of 1876 (as did that of 1866) made the district court and county court courts of general jurisdiction; and gave county courts full power to administer estates of minors, etc. Under these Constitutions the district court is wholly without original jurisdiction over estates of minors or any business pertaining thereto. Const., 1876, art. 5, secs. 8, 16; Const., 1866, art. 4, secs. 6, 16; Messner v. Giddings, 65 Texas, 308; Hardy v. Beaty, 84 Texas, 562.

(2) The probate court is authorized to order at its discretion and without notice, etc., a compromise of any claim to property in dispute or litigation. This proposition is applicable to estates of decedents and also to guardianships. Rev. Stats., art. 1987 (estate of decedents); Rev. Stats., art 2558 (guardianship), art. 2623; Davis v. Beall, 50 S. W. Rep., 1088; Rainey v. Chambers, 56 Texas, 17; Smith v. Pate, 91 Texas, 596; Parlin v. Webster, 17 Texas Civ. App., 631; Blackwood v. Blackwood, 47 S. W. Rep., 485.

It is the special duty of the guardian to recover possession of all the property of his wards, and to protect the same; for this purpose

he has the right to institute and defend suits. He has the authority to compromise such suits when a compromise is to the interest of his wards, and is authorized by the probate court.

The district court has jurisdiction to sell property for the purpose of · partition without intervention of commissioners, even though the parties at interest be minors, and this without any authority from the probate court. Moore v. Blagge, 91 Texas, 151; Grassmeyer v. Beeson, 18 Texas, 766; Blagge v. Shaw, 41 S. W. Rep., 757.

A surety on a guardian's bond is responsible for a guardian's misappropriation of the ward's estate when such estate was received by the guardian as such, regardless of whether the transaction in which said estate was received was void or voidable; such transaction, however, must have been made in the name of or in behalf of the wards. Simons v. County of Jackson, 63 Texas, 431.

Limitation does not begin to run in favor of guardian and against the ward until the guardian is finally discharged; such discharge dating from the time when an order of court is entered of record declaring the removal or discharge of such guardian. Rev. Stats., arts. 3357, 2764, 2770; Marlow v. Lacey, 68 Texas, 156; Main v. Brown, 72 Texas, 505; Blackwell v. Blackwell, 86 Texas, 210.

The court erred in overruling the plaintiff's special exception number 2, touching defendants' attack on the judgment in the case of Cameron v. Thurmond, No. 3417, which exception is as follows: "Plaintiff further excepts to that part of plea number 4 which seeks to attack the judgment of the District Court of Dallas County, Texas, and the decree and order of the probate court, authorizing a compromise of said judgment, because said attack is a collateral attack, alleging irregularities which do not render said judgment, decree or order void." Murchison v. White, 54 Texas, 80; Endell v. Norris, 93 Texas, 540; Schleicher v. Markward, 61 Texas, 100; Martin v. Burns, 80 Texas, 678; Crawford v. McDonald, 88 Texas, 632; Smith v. Perkins, 81 Texas, 157; Hardy v. Beaty, 84 Texas, 566.

The court erred in his findings of law to the effect that the Revised Statutes adopted September, 1879, could alter the nature and legal effect of Reed's contract (i. e., the bond herein sued upon), which was duly and legally executed and delivered long prior to the adoption of said statutes. Douglass v. Ferris, 18 N. Y. Supp., 685; Randall v. Sackett, 77 N. Y., 480; Const., U. S., art. 1, sec. 10; Const., State of Texas, art. 1, sec. 16; Parker v. Buckner, 67 Texas, 23; Bish. on Con., secs. 555, 567, 568, 571; McCracken v. Hayward, 2 How. (U. S.), 608; Robinson v. Magee, 9 Cal., 82; Mellinger v. City of Houston, 68 Texas, 37; Giles v. Stanton, 86 Texas, 620; Walker v. Whitehead, 16 Wall., 314; Hall v. Fields, 81 Texas, 561.

The claim of plaintiffs against the property of J. C. Reed must be determined either by the law in force at the time of the execution of the bond (which is the proper rule), or the law in force at the time of the breach of the bond. Hart. Dig., art. 635; Rev. Stats., arts. 1869, 2071.

The findings of the court upon the effect of the passage of the Revised Statute in September, 1879, upon plaintiffs' claim under the statute of 1840, which was not incorporated in the statutes, can not possibly effect in any way plaintiffs' claim against the property of J. C. Reed in the possession of his heirs under the statute of 1848, which was incorporated in the Revised Statutes and which has been in force from the date of its passage until the present time. Rev. Stats., art. 1869; Blinn v. McDonald, 92 Texas, 604.

Article 2630 of the Revised Statutes is mandatory; the guardian can not be allowed to expend more for the education and maintenance of the wards than the clear (i. e., net) income of the estate. "The authority for the guardian to expend more than the net income of the estate can only be shown by a specific order of the court duly entered upon the minutes." Rev. Stats., art. 2630; Read v. Henderson, 57 S. W. Rep., 78; Blackwood v. Blackwood, 92 Texas, 478; Smythe v. Lumpkin, 62 Texas, 243.

The father is legally obligated to provide for the maintenance and support of the child; and advancements made for such purpose can not be made a charge against the corpus of the child's estate. Moore v. Moore, 31 S. W. Rep., 533.

*Word & Charlton*, for defendants in error J. B. Stovall et al.— The Act of February 5, 1840, only modified the common law so as to charge the representative of a deceased obligor, who was jointly obligated at his death with one or more persons, in the same manner as such representative might have been charged if the obligation had been several. The Act of 1840 did not change the common law liability of heirs and of lands inherited by them. The word heirs not being mentioned in the Act of 1840, and not being named in the bond sued on, Reed's lands descended to his heirs, discharged of all liability. 2 Wait's Act. and Def., 359, art. 5, sec. 2; Baker v. Hunt, 40 Ill., 264.

Article 1869 of the Revised Statutes, did not change the common law distinction between joint and several obligations. There was no statute of Texas prior to March 10, 1887 (Acts Twentieth Legislature, page 17), that ever charged the estate of a deceased person by virtue of a joint obligation. Rev. Stats., art. 2017a.

The estate of a deceased surety is not liable for misappropriation by guardian of assets that came into his hands five years after surety's death, and that had no potential existence at death of surety. Grimes v. Commonwealth, 4 Litt. (Ky.), 1.

The county court has no authority to compromise suit pending in district court for ward's lands. Rev. Stats., art. 2542; Glassgow v. McKinnon, 79 Texas, 116. Neither the county court nor district court had any authority to authorize the compromise of the suit in the case of Cameron v. Thurmond so as to divest all title of wards to lands in suit out of said wards into W. H. Gaston, when there was no controversy as to the wards' title to said lands, and said suit was not an adversary proceeding as to title. Glassgow v. McKinnon, 79 Texas,

116; Messner v. Lewis, 65 Texas, 308. The order of the probate court authorizing A. Bast, guardian, to consent to the district court judgment, vesting title to his wards' lands in W. H. Gaston, on payment by Gaston to A. Bast of the sum of $5000, and the consent decree of the district court in cause No. 3417, conforming to said probate order, was not a compromise of a suit to partition lands, but an attempted sale of the wards' lands to W. H. Gaston, and passed no title.

No title passed to Gaston to the wards' lands under said district court consent decree, and no title to the $5000 paid to A. Bast by Gaston passed to A. Bast or to his wards, and the sureties are not liable on the guardian's bond for any misappropriation of said $5000. State v. Bond, 121 Ind., 187; Hinckley v. Harriman, 45 Mich., 342; State v. Radcliff, 99 Mo., 609; Grimes v. Commonwealth, 4 Litt. (Ky.), 1; Ballard v. Brummitt, 4 Strob. (S. C. Eq.), 171; Allen v. Crosland, 2 Rich. (S. C. Eq.), 68.

The money received by Bast, guardian, under terms of the decree of the district court in case No. 3417, not having been received by virtue of legal authority, did not constitute assets of his wards' estates, and his misappropriation of the same did not render the sureties on his official bond as guardian liable therefor. Same authorities as above.

Guardianship terminated as to E. E. Allen when she married, and terminated as to Charles W. Bast when he reached his majority, and they are each barred by the four years statute of limitation. Timmins v. Bonner, 58 Texas, 555; Parish v. Alston, 65 Texas, 194; Thompson v. Cragg, 24 Texas, 582; Read v. Henderson, 57 S. W. Rep., 80.

The court erred in sustaining the special exception to that part of appellees' answer in the court below which sought to charge plaintiffs, who are appellants herein, with the guardian's care, maintenance and support. Freybe v. Tiernan, 76 Texas, 286; Kendrick v. Wheeler, 85 Texas, 247; Moore v. Moore, 31 S. W. Rep., 533.

Does the four years limitation run against E. E. Bast, who married Granville Allen, May 8, 1892, and C. H. Bast, who reached his majority March 10, 1893? On this question it will be necessary to examine our statutes and the decisions construing them. Article 3357, Revised Statutes, 1895, reads as follows: "All suits on the bond of any guardian shall be commenced and prosecuted within four years after the death, resignation, removal, or discharge of such guardian, and not thereafter." The statute was first enacted in 1848 and then in 1876. The Act of 1870, 2 Paschal's Digest, article 6928, read as follows: "The guardian of a minor continues in office, unless sooner discharged according to law, until the minor arrives at the age of twenty-one years, or, being a female, marries." The Revised Statutes of 1879 and 1895 copied the above article word for word, and added the following clause: "or until such minor shall die." Art. 2512 (1879); art. 2593 (1895).

In Parish v. Alston, 65 Texas, 194, it was held that the marriage of the female minor ward terminated the guardianship and rendered

her of full age, and that a cause of action accrued to her on her marriage if the guardian failed to deliver the money and credits due and belonging to her. The decision held, on article 6928, Paschal's Digest, that the marrying of the female minor ward discharged the guardian and started the four years statute of limitation to running. In Timmins v. Bonner, 58 Texas, 555, article 6928 received the same construction. The above decisions have been cited with approval in the recent cases of Reed v. Henderson, 57 Southwestern Reporter, 80, and Allen v. Stovall, decided at San Antonio, Texas, March 13, 1901.

In Massachusetts the statute read: "That no action shall be maintained against the sureties on any bond given by a guardian, unless it be commenced within four years from the time when the guardian shall be discharged." The Massachusetts Supreme Court, in construing the word discharged, held that it meant any mode by which guardianship is brought to a close, either by removal, resignation, death of guardian, the arrival of a ward at age of twenty-one years, or otherwise. Loring v. Alline, 9 Cush., 70.

The Michigan statute in substance followed the Massachusetts statute. In Probate Judge v. Stevenson, 55 Michigan, 321, the Supreme Court of that State held that the word discharged meant the termination of official character of guardian, and did not mean a discharge by final settlement. The Michigan statute, like our statute, provided that the guardian continued in office until the ward reached his majority, and the court held that when the minor arrived at age the guardianship ended and statute of limitation began to run, although there had been no discharge by final settlement. This brings us to the case of Marlow v. Lacy, 68 Texas, 154. Lacy was guardian of a minor who died in 1877. The heir inheriting the ward's estate brought suit May 5, 1884, against Lacy and his sureties on guardian's bond. After the death of the ward in 1877, the ward's estate remained in the hands of the guardian until he made final settlement in the month of September, 1880. Four years had not run from date of settlement in September, 1880, to date of institution of suit in May, 1884. Under the authorities above quoted, the decision in the Marlow case may have been correct.

If the Marlow case has settled the doctrine that a decree of court must be obtained on final settlement to sever the relation of guardian and ward where a minor ward arrives at the age of twenty-one years, or female ward marries, and that the guardian holds his office until he is discharged by decree of court entered of record, it overrules the case of Timmins v. Bonner, 58 Texas, 554, 65 Texas, 194, and repeals article 2512, Revised Statutes of 1879, and renders meaningless article 2593, Revised Statutes of 1895, and stands alone opposed to every American authority.

E. E. Bast, a female minor ward, married Granville Allen on the 8th day of May, 1892. Under the statute she became of full age at said time. The statute also gave to her husband full control over her estate. Did guardianship, as to her, continue from 1892 to 16th

of August, 1898, and does it still continue? What position does the husband occupy as to the property held by the nonresident guardian? Upon the marriage of E. E. Bast, the possession of all assets and credits was transferred from the guardian, and passed eo instanti to her and her husband, and full dominion and control vested absolutely in the husband. The marital rights of the husband attached and the guardian was no longer the custodian and trustee for the wife, although actual possession remained with the guardian after marriage. Sallee v. Arnold, 32 Mo., 532, 82 Am. Dec., 144.

If the husband and wife have the power to sue in the district court the guardian's sureties on bond without settlement and discharge by decree of the probate court, they also had the power to settle with the guardian, May 8, 1892, without the intervention of the probate court. Under our statute it was the duty of the guardian to immediately settle with Mrs. Allen on her marriage. His failure so to do was a breach of the bond, just as the failure to perform any other duty, and the four years statute began to run at said date. 55 Mich., 321. If the guardian and sureties owe Mrs. Allen anything, it has been due and suable since May 8, 1892.

GAINES, CHIEF JUSTICE.—This suit was brought by E. E. Allen, joined by her husband, Granville Allen, Charles H. Bast, D. S. Bast, and T. J. Bast, upon the bond of Abe Bast, given as their guardian. One of the sureties on the bond having died, the principal, the surviving surety, and the heirs of the deceased surety were made parties defendant.

The conclusions of fact found by the trial judge were approved by the Court of Civil Appeals, and, with one exception to be hereafter noted, present a full statement of the facts of the case. So far as necessary to the purposes of this opinion, we here set them out.

"1. I find that Orlena Bast died prior to the 5th day of January, 1879, leaving as her sole surviving heirs her children, E. E. Bast, Charles H. Bast, David S. Bast, and Thomas J. Bast, and that on 10th March, 1900, they were of following ages, to wit: E. E. Bast, who married Granville Allen on the 8th of May, 1892, was 26 years of age; D. S. Bast was 23 years of age, T. J. Bast 21 years of age, and Chas. H. Bast 28 years of age.

"2. I find that Abe Bast was the father of the children above mentioned, and that he was, by proper orders, appointed guardian of their persons and estates on the 25th day of January, 1879; that he duly qualified as such guardian and on the 26th of March, 1879, he entered into bond in the form stated in plaintiffs' petition, with J. C. Reed and D. F. Cameron as sureties, which said bond was delivered to and was approved by the probate judge of Dallas County, Texas, and was made payable to the county judge of Dallas County, Texas, was in the sum of $3400, and was conditioned that said guardian should faithfully perform all the duties required of him by

law as guardian of the estates of his said wards. [Though the court does not so find, the undisputed fact is that the bond was joint and not joint and several.]

"3. That the only estate that said wards had was their interest in certain lands inherited by them from their said mother, and that the title to said lands was then involved in suit pending in the District Court of Dallas County, Texas; said suit was numbered 3417, and styled Cameron v. Thurmond, which said suit was also a suit for partition and had been filed in 1876, had been once appealed to the Supreme Court, and had been reversed and remanded, and that judgment had been finally rendered on the 17th day of February, 1890, divesting title out of said minor wards of Abe Bast, and vesting title in W. H. Gaston on his paying to said Abe Bast, guardian, the sum of $5000.

"4. I find that said $5000 was paid in cash to Abe Bast prior to the rendition of judgment, as aforesaid, in cause No. 3417; and that the same was paid and said judgment so rendered under a compromise agreement between all the parties at interest in said cause, which said compromise agreement was duly authorized by order of probate court of Dallas County, Texas, made and entered on the minutes of said probate court on the 14th day of February, 1890, in the Bast guardianship.

"5. I find that Abe Bast, guardian, never made any report to the probate court of Dallas County, Texas, where said guardianship was pending, of the amount received, as above stated,—though he was ordered several times to make report,—and that he has never made any settlement with his said wards in any way, and has not accounted either to them or to the probate court for the money so received.

"6. I find that said guardianship was closed, without any accounting, on the 16th of August, 1898.

"7. I find that demand was made on Abe Bast for a settlement about the 5th of October, 1899, the date this suit was filed, and that he made no reply to the demand.

"8. I find that J. C. Reed, one of the sureties on said guardian's bond, died on the 7th day of January, 1885; that the administration was opened in Dallas County, Texas, on his estate on the 28th day of March, 1885, and that on July 3, 1890, said administration was closed by the proper order. That J. C. Reed's surviving widow, who was his second wife, married R. T. Merriman prior to this suit.

"9. I find that the property described in plaintiffs' petition (except the lot in the town of Grand Prairie) was acquired by J. C. Reed prior to 1860 and was community property between himself and his first wife, who died prior to 1880; the said property descended to his heirs and only children, to wit, Bessie Stovall and Emma Harston, and upon the close of the administration upon his estate, was turned over to them by his administrator, and that they, with their husbands, are now in possession of said land, holding the same as such heirs."

Upon the facts found by it, the trial court gave judgment against

defendants Bast and Cameron for the full amount of the bond, but also ruled that as against the heirs of Reed, the deceased surety, the plaintiffs should take nothing. From the judgment, the plaintiffs appealed, and the Court of Civil Appeals reversed the judgment of the trial court and held that Mrs. Allen and Chas. H. Bast were barred by the statute of limitations, but that the other two plaintiffs were entitled to recover not only as against the principal and living surety, but also against the heirs of Reed. That court rendered judgment accordingly.

The plaintiffs, Mrs. Allen and Chas. H. Bast, on one side, and the defendants, the heirs of Reed, on the other, have applied to this court for a writ of error and both applications have been granted.

The heirs of Reed contest a recovery upon four grounds:

1. In the first place, it is contended that since the bond, by its terms, was joint and not several, the liability upon it ceased with the death of Reed. This is the rule of the common law. But in 1840 the Congress of the Republic enacted a statute which contained the following section: "Sec. 5. Be it further enacted, that the representative of one jointly bound with another, for the payment of a debt, or for performance or forbearance of any act, or for any other thing, and dying in the lifetime of the latter, may be charged by virtue of such obligation in the same manner as such representative might have been charged, if the obligors had been bound severally as well as jointly." Laws 1839-40, p. 73. This continued in force until the Revised Statutes of 1879 went into effect, September 1, 1879, which was after the date of the execution of the guardian's bond. Mays v. Cockrum, 57 Texas, 352; Bergstroem v. State, 58 Texas, 92; Glasscock v. Hamilton, 62 Texas, 143; Boyd v. Bell, 69 Texas, 735. (We note just here that the supposed errors in the words of the statute pointed out in Bergstroem v. State, supra, are typographical, as is shown by the "errata" at the end of the original printed volume.) That the law entered into the bond and gave it the effect of a joint and several bond, and that a subsequent repeal of the law did not change its effect and impair its obligation, we think clear. But it is insisted that the word "representative" in the section quoted does not include the heirs of the deceased. The signification of the word is broad enough to embrace both executors or administrators—the personal representatives as known to the common law—and also the heir, who, under that law, occupied the place of the ancestor as to the real estate and represented him as to such property. Doubtless the word, when found in a statute, may be construed as having a more restricted sense, provided the context and the purpose of the law so require. But when neither the context nor the purpose indicates that its meaning was to be limited, we think it should be interpreted in its literal and unrestricted sense. The construction of the word came up for consideration in one of the supreme courts of New York in the case of Lee v. Dill, 39 Barbour, 516. As we gather from the opinion in that case, under the code of New York, parties to actions were, as a rule,

permitted to testify in their own behalf, but not against parties who were "representatives of a deceased person" as to any transactions between the witness and the deceased. In that case, the heir, a feme sole, was a party, and her adversary was upon the trial allowed to give testimony as to such transactions. The question was, whether the heir was a representative of the deceased within the meaning of the statute, and the court held that she was. In disposing of the question, the court say: "A representative is one that stands in the place of another as heir or in the right of succeeding to an estate of inheritance; one who takes by representation. Webst. Dic. One who occupies another's place and succeeds to his rights and liabilities. Executors and administrators represent, in all matters in which the personal estate is concerned, the person of the testator or intestate, as the heir does that of his ancestor. Burrill's Law Dic.; 2 Steph. Com., 428. Representatives of a deceased person are real or personal; the former being the heirs at law, and the latter, ordinarily, the executors or administrators. The term representative includes both classes. When the personal representatives alone are intended in a statute, they are so named, and there is no intimation of an intent to limit the protection and benefit of this exception to the personal representatives. The 'real representatives' are as much within the reason of the rule as the personal representatives, and there is as much reason for protecting the one class as the other." The case was affirmed by the Court of Appeals of New York but apparently without a written opinion. See 2 Hand (41 N. Y.), 619. Practically, the same construction was applied in this court in the case of Grayson v. Winnie, 13 Texas, 288. In the latter case Chief Justice Hemphill says: "The section above cited employs the phrase legal representative of the deceased. This is a general term, susceptible of different significations, and perhaps it would have been more judicious to have followed the language of the Act of 1838, viz., executor, administrator, guardian, creditor, or heir. Acts of 1838. There is no room for doubt, under such language, that in proper cases the heir might appear himself and continue a suit begun by the ancestor or by his administrator. We are not to infer, however, that by the change of phraseology the Legislature intended to deprive heirs of the power to represent the deceased, they being in fact his real and permanent representatives, the others being appointed and representing him for merely temporary purposes and trusts. I apprehend that on examination it will be found that in repeated instances in our statutes the terms legal representatives and heirs are of synonymous signification and import. This is not peculiar to our laws, for it will be found that in some of the other States the terms legal representatives have not been considered identical with executors and administrators."

The purpose of the act we have under consideration was to abolish the common law rule as to joint bonds, and we see no reason why an action should have been allowed upon such bond against the executor or administrator of a deceased obligor, and should not be allowed to

charge the estate in the hands of the heirs with the debt where the administration had been closed. It is worthy of note that in the twenty-eighth section of the act "regulating the duties of probate courts and the settlement of successions," which was passed at the same session at which the statute in question became a law, "the personal representative or representatives of any testator or intestate" are mentioned,—evidently meaning executors or administrators, as the case might be. Laws 1839-40, p. 118. This shows that the Congress in session when these acts were passed were not unmindful of the distinction between the personal and the real representatives of an estate, and that when they meant to make a law applicable to executors and administrators and not to heirs, they used the terms "personal representatives." There is nothing in the context of the statute which indicates that the word "representatives" was not intended to include heirs; while it is necessary that they should be included in order to accomplish in full the purpose of its enactment. Upon this point, we conclude that the heirs of Reed were liable for a breach of the bond, whether occurring before or after his death.

2. In the second place, it is contended that the compromise of the suit in the District Court of Dallas County, under which the guardian secured the money with which the defendants are sought to be charged, was not authorized by law, and that therefore the guardian is not responsible to his wards therefor. It is unnecessary to discuss the facts pertaining to that matter. The statute settles the question. Section 69 of the Act of 1876 in relation to guardians provides: "The guardian or his heirs, executors, administrators, or assigns shall not dispute the right of the ward to any property that shall have come to his possession as guardian, except such property as shall have been recovered from the guardian, or there be a personal action pending on account of it." Laws 1876, p. 180. This was the law when the bond in this case was given and has ever since been the law. Rev. Stats. 1875, art. 2551; Rev. Stats. 1895, art. 2632. We think the statute in the main, is but declaratory of the common law.

3. In the third place, the statute of limitations is urged in bar of a recovery as to two of the plaintiffs. Chas. H. Bast attained his majority and Mrs. Allen was married more than four years before the suit was brought and before a demand for settlement was made. If the statute began to run from the time the relation of guardian and ward ceased to exist, then the action as to these parties is barred. But if the statute did not run until the guardian was discharged, then since the guardian has never been discharged, the suit was brought in time. The statute applicable to the case reads as follows: "All suits on the bond of any executor, administrator, or guardian shall be commenced and prosecuted within four years next after the death, resignation, removal, or discharge of such executor, administrator, or guardian, and not thereafter." Rev. Stats., art. 3357. Article 2764 provides that "when the ward dies, or if a minor arrives at the age of twenty-one years, or if a female marries, * * * the guardianship

shall be immediately settled and the guardian discharged, as provided in the following articles of" the chapter. The same article is found in the Revised Statutes of 1879, article 2682.

Marlow v. Lacy, 68 Texas, 154, was a suit by heirs and the assignees of heirs of a deceased ward upon the bond of her guardian, and the defense of the statute of limitations was set up. If the statute ran from the time the relationship of guardian and ward ceased—in that case, from the death of the ward—the bar of the statute was complete; whereas, on the other hand, if the statute did not commence to run until the guardian was discharged, the defense was not good. The question being thus sharply presented, this court held in an elaborate and exhaustive opinion by Judge Stayton, that since the guardian had never been discharged, the statute of limitations was not a bar to recovery. If the death of the ward did not put the statute of limitations in operation in that case, neither the majority of C. H. Bast nor the marriage of Mrs. Allen set it in motion in this case. We think the decision in Marlow v. Lacy is correct, and that it is decisive of the question now under consideration. We do not regard the case of Timmins v. Bonner, 58 Texas, 555, and of Parish v. Alston, 65 Texas, 198, relied on by counsel for the heirs of Reed, as being in conflict with Marlow v. Lacy. The sole question decided in Timmins v. Bonner was that the 45th section of the Act of 1876, in relation to guardians, which attempted to confer jurisdiction upon the county court over a suit upon a guardian's bond, was unconstitutional. It is true that in Parish v. Alston it was held, that after the lapse of four years from the marriage of a female ward, a suit upon the guardian's bond was barred. In that case, the ward married in April, 1872, and the four years had elapsed long before the passage of the present law and even before the passage of the guardian act of 1876, which contained a provision as to suits on guardian's bonds similar to that now found in the Revised Statutes. No statute was construed in that case. The ruling merely was that upon the general principles of the law, the statute of limitations to a suit on a guardian's bond began to run upon the termination of the relation, by the marriage of the female ward, and since four years had elapsed since the ward had married, the action was barred by the general limitation of four years upon written contracts.

The decision of the Court of Civil Appeals in Read v. Henderson, 57 Southwestern Reporter, 78 is in conflict with that of this court in Marlow v. Lacy, supra, and in that case a writ of error was denied by this court. But the ruling on the question of limitation was in favor of the party who applied for the writ of error and hence that question was not presented to this court. The fact that the party who was held to be barred did not apply to us for a writ of error was doubtless not known to the Court of Civil Appeals when they decided the present case, and the resulting misconception has probably led to the ruling in that court which we deem erroneous.

We think the action was not barred as to Mrs. Allen and C. H. Bast.

4. The fourth ground of error relied upon is that the Court of Civil Appeals erred in holding in effect that the guardian was not entitled to credit for expenditures in the maintenance of his wards. That the Court of Civil Appeals were correct in their ruling is shown by the decisions of this court. Blackwood v. Blackwood, 92 Texas, 478; Jones v. Parker, 67 Texas, 82; Smythe v. Lumpkin, 62 Texas, 242.

The judgment of the Court of Civil Appeals and that of the District Court are accordingly reversed and here rendered for all the plaintiffs against defendants Abe Bast, D. F. Cameron, and the heirs of Reed for the penalty of the bond, with interest at 6 per cent per annum from October 5, 1899, the date of the demand.

*Reversed and rendered.*

ON MOTION TO CORRECT OPINION.

GAINES, CHIEF JUSTICE.—As we think our opinion in this case sufficiently indicates the judgment that was to be rendered and that the judgment is in accordance with the opinion, the motion to correct the opinion is overruled.