

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

July 11, 1960

Hon. William A. Harrison
Commissioner of Insurance
State Board of Insurance
Austin 14, Texas

Opinion No. WW-879

Re: Does the payment of com-
missions for the allowance of
discounts by "representatives"
appointed by Title Insurance
Companies constitute a violation
of Article 9.22 of the Texas
Insurance Code and related
questions.

Dear Mr. Harrison:

We quote from your request for an opinion as follows:

"Article 9.22 of the Texas Insurance Code reads
as follows: 'No commissions, rebates, discounts, or
other device shall be paid, allowed or permitted by any
company, domestic or foreign, doing the business pro-
vided for in this chapter, relating to title policies or
underwriting contracts; provided this shall not prevent
any title company from appointing as its representative
in any county any person, firm or corporation owning
and operating an abstract plant in such county and making
such arrangement for division of premiums as may be
approved by the Board.' " (Emphasis added)

". . .

"In some instances, in connection with the issuance
of title insurance policies, we find that persons, firms,
or corporations owning and operating an abstract plant
who have been appointed as representatives by a title com-
pany are paying commissions and allowing discounts to
attorneys or other persons who are not their salaried
employees. The payment of the commissions or the
allowance of such discounts is from the portion of the
premium to which the owner of the abstract plant is
entitled under the division of premium approved by the
Board. However, in most instances, the title company
has knowledge of the payment of such commissions or
the allowance of such discounts.

"In view of the above mentioned provisions of the
Texas Insurance Code and in the light of the fact situation
set out in the preceding paragraph, I request your opinion
on the following questions: (1) Are the owners of abstract
plants who have been appointed 'representatives' by title
insurance companies 'title insurance agents' as that term
is used in Articles 21.09, 21.10, 21.11, 21.12 and 21.13 of
the Texas Insurance Code? (2) If your answer to the above
question is in the affirmative, must such 'representatives'
of title insurance companies secure an agent's license
from the State Board of Insurance before issuing or selling
title insurance policies? If so, under what statutory pro-
vision or in what manner are they to be licensed as agents?
Does the approval of the State Board of Insurance of the
premium division constitute a licensing of such represen-
tative as 'title insurance agent'? (3) Does the payment of
commissions or the allowance of discounts by such
'representatives' constitute a violation of Article 9.22 of
the Texas Insurance Code on the part of the 'representatives'
or the title insurance company or both?"

With respect to Question 1, you are advised that owners of ab-
stract plants who have been appointed "representatives" by title insur-
ance companies are "title insurance agents" as that term is used in
Articles 21.09, 21.10, 21.11, 21.12 and 21.13 of the Texas Insurance
Code.

Chapter 9 of the Texas Insurance Code deals specifically with
title insurance companies. The only authorization contained therein
for the appointment of "representatives" or "agents" is found in
Article 9.22 as quoted above. The remaining portions of Chapter 9
deal specifically with the regulation of title insurance companies and
title insurance business, as opposed to the "agent" or "representative."
With the exception of Article 9.22, the only specific reference made to
title insurance "representatives" or "agents" are those sections con-
tained in Chapter 21 above mentioned, dealing specifically with agents
and agent's licenses. The use of the term "agent" in the pertinent
articles of Chapter 21, rather than the term "representative" does not
mean that those persons, firms, or corporations owning and operating
an abstract company, mentioned in Article 9.22, may not be "title insur-
ance agents" as that term is used in Chapter 21. The Legislature of
Texas has used the words "agent" and "representative" interchangeably
in numerous instances. The courts of Texas have recognized that such
terms are synonymous. Alexander v. Barfield, 6 Tex. 400, 403; Allen v.
Stovall, 63 S.W. 863, 866, 94 Tex. 618; General Motors Acceptance

Corporation v. Lee, Tex.Civ.App., 120 S.W.2d 622, 625; Talley v. Shasta Oil Company, Tex.Civ.App., 146 S.W.2d 802,805; Texas Power & Light Company v. Adamson, Tex.Civ.App., 203 S.W.2d 275, 276. The Adamson case, supra, contains the most concise statement:

> " It is sometimes difficult to distinguish between an agent or representative and a servant or employee. Anyone who does the slightest act for another might be the representative of such person for the performance of that limited service if we give the term its broadest meaning. In legal contemplation, however, 'representative' implies something more than that. It connotes the use of at least some discretionary authority; taking the place of the principal, and acting in the furtherance of his business; the power to bind the principal in a contractual sense. As used in the statute under consideration, we think the terms 'agent' and 'representative' are interchangeable. . ."

Your Question 2 is predicated on an affirmative answer to Question 1, which is given. You are advised with regard to the first part of Question 2 that the "representatives" of title insurance companies need not secure an agent's license from the State Board of Insurance before issuing or selling title insurance policies. Article 9.27 of the Texas Insurance Code provides as follows:

> "Unless title insurance companies or the business of title insurance is especially mentioned, no provision of this code, except as contained in this chapter, shall be applicable to corporations incorporated or doing business exclusively under this chapter, or to title insurance business conducted by corporations created under Subdivision 57, Article 13.02 of the Revised Civil Statutes of 1925, or under Chapter 8 of this code, or under any other law, and no law hereafter enacted shall apply to such title insurance companies or to such title insurance business unless such subsequent act expressly states that it shall so apply."

Although title insurance companies and the business of title insurance is specifically referred to in Articles 21.09, 21.10, 21.11, 21.12 and 21.13 of the Code, Article 21.14, dealing with the licensing of local recording agents and solicitors, contains no mention of either title insurance companies, title insurance business, or title insurance agents. Absent such express reference, Article 9.27 quoted above would preclude the insurance department from licensing the "representatives" of title insurance companies mentioned in Article 9.22.

In 1954 the Supreme Court of Texas had occasion to interpret the effect of Article 9.27 when it was contended that the title insurance companies and title insurance business were subject to the regulation of Article 1.19 of the Insurance Code. Speaking for the Court, Judge Hickman stated:

> "We agree with the holding of the Court of Civil Appeals that that article (Article 1.19) has no application because Article 9.27, Chapter 9, of the Insurance Code, relating to title insurance companies provides that no provision of the Insurance Code, except Chapter 9, shall apply to title insurance companies or business unless expressly mentioned, and we find no such mention in Article 1.19." Board of Insurance Commissioners, et al, v. Title Insurance Association of Texas, et al, ____ Tex. ____, (1954), 272 S.W.2d 95.

We find nothing in Article 21.14 of the Insurance Code, dealing with agents and agent's licenses, that would indicate that such article is any more applicable to title companies or business than was Article 1.19 in the Title Insurance Association of Texas case, supra. Indeed, when it is noted that Section 3 of Article 21.14 expressly prohibits a corporation from being licensed, while Article 9.22 provides that corporations may be appointed as "representatives" of title insurance companies, the conclusion is inescapable that the Board may not require such "representative" to be licensed. The long standing administrative interpretation by your Department is consistent with this conclusion.

In light of our answer to the first part of your Question 2, the remaining portions thereof become moot.

With respect to your Question 3, you are advised that the payment of commissions and the allowance of discounts by "representatives" appointed by title insurance companies constitutes a violation of Article 9.22 of the Texas Insurance Code both on the part of the title insurance company and the appointed "representative." We again quote Article 9.22 in order that here it may be conveniently analyzed:

> "No commissions, rebates, discounts, or other device shall be paid, allowed or permitted by any company, domestic or foreign, doing the business provided for in this chapter, relating to title policies or underwriting contracts; provided this shall not prevent any title company from appointing as its representative in any county any person, firm or corporation owning and

> operating an abstract plant in such county and making
> such arrangements for division of premiums as may be
> approved by the Board."

Article 9.22 contains provisions which are common to statutory regulations of other lines of insurance, prohibiting the granting of commissions, rebates, discounts, and other concessions to insurance buyers considered to constitute detrimental and unfair competition, and which lead to discrimination by the company as between insureds and the cost of insurance.

The proviso in Article 9.22 effects an exception to the prohibition against commissions, rebates and discounts. It provides, in effect, that the appointment by a title insurance company of a person, firm or corporation owning and operating an abstract plant as its representative, with compensation to the representative on a division of premium basis, shall not constitute a violation of the rule against discrimination and unfair competition where such arrangement is subject to supervision by the State Board of Insurance. In such cases, it makes lawful that which otherwise might be unlawful. An analysis of such statutes is contained in Couch on Insurance, Vol. 3, Sec. 584, page 1872:

> "The object or intent of statutes aimed against
> discrimination and rebates is that uniform rates shall
> be established and maintained, so as to secure to all
> persons equality as to burdens imposed, as well as to
> benefits derived, by preventing discrimination by insur-
> ers in favor of individuals of the same class, either as
> to premiums charged or dividends allowed, or, as it has
> been stated, in order that prospective insurants of the
> same class shall not be unfairly treated or discriminated
> against, by inducements being given to one of such class,
> which are not available to all therein."

In construing the purpose of the Texas statute, we cite with approval Attorney General's Opinion No. V-280, January 30, 1947, under a prior Attorney General. Contained therein is a discussion of the legislative intent of Article 9.22:

> ". . .Our interpretation of the scope and purpose of
> Section 21 is supported by the language of the caption of
> the Act in that it describes Section 21 as 'prohibiting com-
> missions, rebates and discounts by corporations doing
> business under this Act.' This is the only language con-
> tained in the caption specifically descriptive of Section 21.

The only subject contained in this clause of the caption is 'commissions, rebates and discounts' and nothing is contained in this language to indicate the purpose of Section 21 to be otherwise. Considerations of constitutionality impel us to construe the body of the Act in a manner consistent with the stated purpose of the Act, as contained in the caption. The caption is, of course, always considered as valid evidence of the legislative intent.

"We must therefore assume that the proviso was intended to preserve a practice in existence at the time of the passage of the Act, and was designed to protect the companies from a possible interpretation which would prohibit a division of premiums as payment for legitimate underwriting services performed by abstracters, and at the same time to afford supervision by the Board of such division in order to prevent abuses of the rule against rebates, etc. Given this interpretation, any uncertainty in the language of Section 21 is minimized. The purpose of the proviso is clear, consistent with the caption, consistent with the usual regulation of other fields of insurance activity and consistent with the negative language used in the proviso."

There is no doubt but that the title insurance company could not make arrangement for division of premiums with those persons described in your request as the "lawyers and other persons who are not their salaried employees." This is the clear import of that portion of Article 9.22 preceding the proviso clause. It is difficult to see how a "representative" who is permitted a division of premiums as the only exception to the general rule against allowance of commissions, rebates, discounts, etc., would be permitted, with knowledge of the title company, to accomplish that which the title insurance company itself is prohibited from accomplishing. That this would be the attitude of the Supreme Court of Texas may be reasonably implied from their holding in Board of Insurance Commissioners v. Title Insurance Association of Texas, supra. There, it is stated:

"It is argued that respondents have no right to prevent competition in their business. That would be a correct proposition in the transaction of ordinary business enterprises if the competition is not illegal, but, as well stated in the opinion of the Court of Civil Appeals [264 S.W.2d 132]

" 'The business of title insurance is one effected by public use, is of public interest and is subject to reasonable legislative control. Daniel v. Tyrrell v. Garth Investment Company, 227 Tex. 213, 93 S.W.2d 372.

" 'In the exercise of this control the Legislature has provided that a title company representative in a county must own and operate an abstract plant in such county. Any representative lacking this qualification is an illegal representative and any permit authorizing such illegal representative to act for his principal and to divide premiums is invalid and operation thereunder is, in our opinion, an unlawful invasion of a competitors property rights.' "

The court explicitly recognizes that those persons acting as "representatives" of a title insurance company under the provisions of 9.22 must strictly comply with the requirements contained therein. The court implicitly recognizes that any deviation from these require-ments would operate to encourage and promote those things which Article 9.22 seeks to condemn, i.e., unfair competition resulting from payment of commissions, rebates, etc. It does not matter that in the situation here presented this division of premium is done indirectly rather than directly. The duty to supervise such division of premiums placed on the Board is by no means lessened.

It is to be noted that in answer to your third question, we have advised you that the sanction contained in the statute operates both against the title insurance company and the appointed "representative." The Board, in its scrutiny of arrangements for division of premiums, may withhold or withdraw its approval where there is evidence to in-dicate premiums are being divided and rebates allowed to persons not qualified under the provisions of Article 9.22.

In addition thereto, the Board has available to it the provisions of Article 9.21, Insurance Code, dealing with revocation of certificates of authority of "any corporation, domestic or foreign," who "shall fail or refuse to comply with any of the provisions or requirements of this Chapter."

This opinion is not to be construed as meaning that the contrac-tual relationship between such "representatives" and attorneys who per-form title searches and other legal services for such representatives is to be impaired to any extent.

## SUMMARY

Owners of abstract plants who have been appointed "representatives" by title insurance companies are "title insurance agents" as that term is used in Articles 21.09, 21.10, 21.11, 21.12 and 21.13.

Such "representative" need not secure an agent's license from the State Board of Insurance before issuing and selling title insurance policies.

The payment of commissions or the allowance of discounts by such "representative" constitutes a violation of Article 9.22 of the Texas Insurance Code on the part of both the "representative" and the title insurance company.

Respectfully submitted,

WILL WILSON
Attorney General of Texas

By _____
C. Dean Davis
Assistant Attorney General

CDD:lmc

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
W. R. Scruggs
Howard Mays
Leon Pesek

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore