F. A. ORDELHEIDE, Administrator, Respondent, v. MODERN BROTHERHOOD OF AMERICA, Appellant.

St. Louis Court of Appeals, July 15, 1911.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Exemption from General Laws: Compliance with Statute. An association may be a fraternal society, with lodge system, ritual, etc., but . if it issues policies of a character not authorized by section 7109, Revised Statutes 1909, it is not entitled to the special privileges given by the statute.

2. ———: ———: ———: Designating Legal Representative as Beneficiary. A foreign corporation, authorized to issue benefit certificates to the husband, wife, relative, legal representative, heir, or legatee of the member, which issues in this state a certificate payable to the *legal representative* of the member is not within the exemption accorded to fraternal beneficiary associations by section 7109, Revised Statutes 1909, since that section provides for the payment of death benefits to the families, heirs, blood relatives, affianced husband or wife of, or to persons dependent on, the member, and hence such a corporation is subject to section 6945, making the defense of suicide unavailable to life insurance companies.

3. ———: ———: ———: ———: Effect of being Licensed by State. Where a foreign corporation, authorized to issue benefit certificates, issues a certificate payable to a person not within section 7109, Revised Statutes 1909, the fact that such corporation has received the statutory authority to do business in this state as a fraternal beneficiary association will not relieve it from the operation of section 6945, making the defense of suicide unavailable to life insurance companies.

Ordelheide v. Modern Brotherhood of America.

4. ———: ———: ———: ———: "Legal Representative" Construed. The words "legal representatives," in a certificate issued by a foreign corporation authorized to issue benefit certificates, which recites that the amount thereof shall be paid to "legal representatives, related to the member as . . . " do not include any of the persons specified in section 7109, Revised Statutes 1909, providing that death benefits shall be paid to the families, heirs, blood relatives, affianced husband or wife of, or to persons dependent on, the member, but mean the executor or administrator of the member, and the liability of the corporation is that of a life insurance company, under section 6945, making the defense of suicide unavailable to life insurance companies; the omission to strike out from the certificate the printed words "related to the insured as . . . " not being the expression of an intention that the "legal representatives" should be related to insured in some one of the authorized classes.

**Dissenting Opinion by REYNOLDS, P. J.**

5. ———: ———: ———: ———: "Legal Representative" Construed. Where a foreign corporation, organized as a fraternal beneficiary association and licensed to do business as such in this state, issued a certificate payable on the death of the member to his legal representative, the term "legal representative," interpreted according to the laws of this state, under which the certificate was not assignable and its proceeds would not go into the estate of decedent but to some one of blood kin, to the heirs, or to the affianced husband or wife, and interpreted also according to the objects of the society, as set out in its by-laws, viz.: "to bestow substantial benefits among the family, widow, heirs, blood relations *and such others as may be permitted by the laws of the state wherein this brotherhood shall operate,*" meant such persons as could lawfully become "legal representatives" in a certificate of that kind, under the laws of this state, and hence the certificate was not of a character not authorized by section 7109, Revised Statutes 1909.

6. ———: ———: ———: ———: Effect of being Licensed by State. The question of the right of a foreign corporation to transact business in this state as a fraternal beneficiary association is, in the first instance, committed to the administration, discretion and control of the Superintendent of Insurance, and where he has issued a certificate to such corporation to transact such business, the courts should not lightly ignore it.

7. ———: ———: Suicide Statute: Applicable only to Insurance Companies. Section 6945, Revised Statutes 1909, making the defense of suicide unavailable to life insurance companies, is not

applicable to fraternal beneficiary associations nor to any but life and accident insurance companies proper.

8. ———: ———: ———: ———. Fraternal beneficiary associations cannot, by transcending their powers, impose upon themselves and the certificates they issue a character which the law not only does not give them but expressly prohibits them from assuming, and hence such an association is not subjected to the provisions of section 6945, Revised Statutes 1909, which applies only to life and accident insurance companies, by reason of the fact that it issues, or is by its charter authorized to issue, certificates of a character not contemplated by section 7109, Revised Statutes 1909.

Appeal from Warren County Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*Ball & Sparrow* for appellant.

(1) Our insistence is that the portions of section 1408, R. S. Mo. 1899 and of section 3 of the laws of Iowa merely designating the persons to whom benefit certificates may be made payable, are no part of the definition of a fraternal benefit society under either statute. To determine whether or not appellant is a fraternal benefit society the only inquiries to be made are, whether it is a corporation or voluntary association organized and carried on for the sole benefit of its members, and not for profit; whether it has a lodge system with ritualistic form of work and representative form of government; whether provision is made for the payment of benefits in case of death, or in case of sickness, temporary or permanent physical disability, either as a result of disease, accident or old age, and whether the funds from which benefits and expenses are paid are derived from assessments or dues collected from its members. If all of these things are found to be true then appellant is a fraternal benefit society. Westerman v. K. of P., 196 Mo. 670;

Loyd v. Woodman, 113 Mo. App. 19; Armstrong v. Modern Brotherhood, 132 Mo. App. 171. Being a fraternal benefit society, therefore, and it being admitted that Leek committed suicide, respondent cannot recover in this action. Morton v. Royal Tribe of Jos., 93 Mo. App. 78; Brasfield v. M. W. A., 88 Mo. App. 208; Hudnall v. M. W. A., 103 Mo. App. 356; Shotliff .v. M. W. A., 100 Mo. App. 138. (2) The very object and purpose of fraternal insurance is to provide a support for the family of the insured. The words "legal representatives," when used in a benefit certificate of this kind, should, therefore, not be given a construction which will thwart the very purpose of the law. That the words "legal representatives" have lost much of their original distinctive force and are now used to describe either executor and administrator, heirs or descendants, and next of kin or distributees, is abundantly supported by the authorities. Warnecke v. Lembea, 71 Ill. 91; In re Cordrad's Estate, 89, Ia. 396; Schultz v. Ins. Co., 59 Minn. 309; Allen v. Stovall, 94 Tex. 618; Masonic Relief Assn. v. McAveley, 2 Mackey, 70; Leonard v. Harvey, 71 N. Y. Supp., 546; Robinson v. Hurst, 78 Md. 59; Hodge's Appeal, 8 W. N. C. 209; In re Riesenberg, 116 Mo. App. 308; Elstroth v. Young, 83 Mo. App. 253; Ewing v. Shannahan, 113 Mo. 188; Loos, Guardian v. Life Ins. Co., 41 Mo. 538. (3) Leek was the certificate holder, and, because of section 1418 Revised Statutes 1899 respondent (his administrator) would be compelled to pay the amount of said certificate to the very persons named in section 1408, as beneficiaries, viz.; to Leek's heirs. This proposition is well established by the following authorities: Grand Lodge A. O. U. W. v. Dister, 77 Mo. App. 608; Beall v. Graham, 125 Mo. App. 38; Rose v. Wortham, 95 Tenn. 505; Harvey v. Harrison, 89 Tenn. 470. (4) Conceding, for the sake of argument, that the charter powers of the appellant enabled it to write policies in Iowa which are

ultra vires its Missouri authority, can this fact be invoked by respondent to wrest from appellant a substantial defense in this action? It would certainly not lie in appellant's mouth to make the same plea in this case in order to avoid its liability upon the policy. City v. Davidson, 102 Mo. 149; Cass Co. v. Ins. Co., 188 Mo. 1. Since estoppels are mutual, the beneficiaries under the certificate cannot be heard to allege that the appellant is an outlaw company. Herman on Estoppels, etc., par. 719, p. 848.

*Emil Roehrig* for respondent.

(1) The defense of suicide is not available where it does not appear that the deceased contemplated suicide at the time of taking out the policy of insurance. Section 7896, R. S. 1899. (2) This appellant has failed to avail itself of the benefits and exemptions accorded fraternal beneficiary associations which come within the descriptions of such associations defined by section 1408, R. S. 1899, because of its failure to comply with the terms of sections 1408-1410, R. S. 1899. Dennis v. M. B. A., 119 Mo. App. 210; Pauley v. Modern Woodmen, 113 Mo. App. 473; Herzberg v. M. B. A., 110 Mo. App. 328; Baltzell v. Modern Woodmen, 98 Mo. App. 153; Brasfield v. Modern Woodmen, 88 Mo. App. 208. (3) Appellant is not a fraternal beneficiary association as defined by the laws of the State of Missouri. R. S. 1899, secs. 1408 to 1410 inc.; State ex rel. v. O'rear, 144 Mo. 157; Baltzell v. Modern Woodmen, 98 Mo. App. 153; Dennis v. M. B. A., 119 Mo. App. 210; Bacon, Ben. Societies, sec. 399; Herzberg v. M. B. A., 110 Mo. App. 328; Bransfield v. Maccabees, 92 Mo. App. 102; Brasfield v. M. W. A., 88 Mo. App., 208; McDonald v. Life Ass'n., 154 Mo. 618; Aloe v. Life Ass'n., 164 Mo. 675; Logan v. Fidelity & Casualty Co., 146 Mo. 114. (4) The contract made between appellant and the respondent's intestate, Walter L. Leek, is not such a

contract as is intended to be covered by and protected by the provisions of the Missouri law relating to fraternal beneficiary associations. R. S. 1899, secs. 1408–1410 inc.; Herzberg v. M. B. A., 110 Mo. App. 328; State ex rel. v. O'rear, 144 Mo. 129; Toomey v. Supreme Lodge K. of P., 147 Mo. 129. (5) The term "legal representative" in the common use of the words and in its ordinary meaning and signification is a term equivalent to "executor" or "administrator." 25 Cyclopedia of Law and Proc., p. 177; Herzberg v. Modern Brotherhood, 110 Mo. App. 328. The meaning of the term in a particular case depends upon and is controlled by the context and the intent with which it is used, as well as by the existing state of things and the relative situation of the parties to be affected. 25 Cyclopedia, p. 177; Loos v. Life Ins. Co., 41 Mo. 538.

CAULFIELD, J.—This is an action brought by an administrator to recover the amount, with interest, of what plaintiff calls a life insurance policy and defendant calls a benefit certificate issued by a fraternal benefit society, for one thousand dollars. The plaintiff had judgment and defendant has appealed. The policy or certificate was issued to plaintiff's intestate, Walter L. Leek, and was payable to his "legal representatives, related to the member as . . ." Defendant admits all matters essential to a recovery by the plaintiff and relies solely for its defense upon the fact that the insured committed suicide, there being a stipulation in the application made by the insured, as well as in the by-laws of the defendant at the time the certificate was issued, that in that event the certificate would be void. It is conceded that the deceased came to his death by suicide, but there is no showing that he contemplated suicide at the time he made his application. In the absence of such showing, section 6945 of the Revised Statutes 1909, makes the defense of suicide

unavailable to the defendant, unless, as it contends, it is, as to the certificate here sued upon, entitled to claim the exemption accorded to a fraternal beneficiary association by section 7109, which provides, among other things, that *"payments of death benefits shall be to the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon, the member.* Such association shall be governed by this article, and shall be exempt from the provisions of the insurance laws of this state."

The defendant is an Iowa corporation, doing business in this state by certificate from the secretary of state, as provided by our statute. By the laws of Iowa, under which defendant was organized, defendant is authorized to issue benefit certificates to the "husband, wife, relative, *legal representative,* heir or legatee of such member." The insured in his application for the certificate sued upon, designated, as the beneficiary, his "legal representatives." The certificate states that its amount "shall be paid to legal representatives, related to the member as  . . ." It will thus be noted that not only is the defendant authorized by the laws of Iowa to issue benefit certificates to a class not authorized by our law, i. e. legal representatives, but in this case it exercised that power within the confines of this state by making the certificate here sued upon payable to the "legal representatives" of the insured. The only question is whether, having issued a certificate not authorized by our statute, it can still claim the exemption which our statute grants as a special privilege to those doing the kind of business prescribed. We have concluded that it cannot. There are different classes of insurers under our statutes. Some have the privilege of doing a more general business than others and are therefore more heavily burdened by having read into every policy they issue section 6945 of the Revised Statutes of 1909, which forbids the defense of suicide except upon the showing

prescribed. Others, fraternal beneficiary associations, are allowed to do only a restricted insurance business, being limited to issuing policies or certificates to "the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the member." Because of this and other limitations, they are specially privileged, by being exempted from the general insurance laws. If their operations are not so limited, then they are not so privileged. It is only "such associations"—i. e. those of the character and observing the limitations described in section 7109—that enjoy the privilege of being exempted. An association may be a fraternal society, with lodge system, ritual, etc., but if it is issuing policies of a character not authorized by the statute, it is not entitled to the special privileges given by the statute. [State ex rel. v. Vandiver, 213 Mo. 187, 1. c. 197, et seq., 111 S. W. 911.] "It is not the nature of the society, but the terms of the contract in suit which determines whether its exemption from the general statute shall apply in that case;" and if it executes a contract which the statute does not authorize it to execute, it is, as to such contract, not entitled to the exemption. [Wilson v. Amer. Benevolent Assn., 125 Mo. App. 597, 103 S. W. 109.] Thus, in Toomey v. Supreme Lodge, 147 Mo. 129, 48 S. W. 936, as construed by our Supreme Court in State ex rel. vs. Vandiver, supra, 1. c. 199, "it was held that the defense of suicide was unavailing because, although the defendant was a fraternal beneficiary society, yet the policy sued on was an old-line policy of life insurance and therefore subject to the general statute, and the defendant was liable as an old-line company would be;" and in Aloe v. Fidelity M. Life Assn., 164 Mo. 675, 55 S. W. 993, as likewise construed, "it was held that although the defendant was chartered to do business only on the assessment plan, yet the policy it had issued in that case was not on that plan but on old-line policy, and therefore

the defendant was held liable as an old-line company."
And the Kansas City Court of Appeals has held three
times (twice in cases involving this very defendant)
that a benefit certificate made payable to the "legal
representatives" of the insured is without the exemp-
tion allowed to fraternal beneficiary associations under
section 7109. [Herzberg v. Modern Brotherhood of
America, 110 Mo. App. 328, 85 S. W. 986; Wilson v.
American Benevolent Assn., 125 Mo. App. 597, 103
S. W. 109; Kroge v. Modern Brotherhood of America,
126 Mo. App. 693, 105 S. W. 685.] These cases are
directly in point on the question here involved, and we
approve the conclusions reached in them. In doing
so, we see no necessity and have no inclination for
departing from our conclusion in the case of Arm-
strong v. Modern Brotherhood of America, 132 Mo.
App. 171, 112 S. W. 24. In that case the beneficiary
named was within the classes permitted by our statute
and the contract before us was fully authorized by the
statute. There was no attempt there, as there is here,
to issue a contract which is not exempted from the
suicide provision of the insurance laws. In that case,
the contract was of the privileged class. In this one
it is not. We held there that the limited authorized
class was privileged by being exempt. We hold here
that the unauthorized class is not privileged.

Nor can the fact that the defendant has received
the statutory certificate of authority to do business as
a fraternal beneficiary association affect the matter.
[Herzberg v. Brotherhood, supra.]

We are not impressed by the suggestion that the
designation "legal representatives" must be construed
to mean, not the executor or administrator of the in-
sured, but some one of the classes authorized by our
statute. The words "legal representatives" must be
construed to mean "executors or administrators,"
in the absence of anything showing a different intent.
[New York Life Ins. Co. v. Kansas City Bank, 121

Mo. App. 479, 97 S. W. 195; Walker v. Peters, 139 Mo. App. 681, 124 S. W. 35.]    Here, there is a total absence of anything showing such different intent.    There is not even a suggestion that the insured had any family, heirs, blood relatives, affianced wife, or dependents. There is nothing disclosed concerning him, except that he was a young man twenty-two years of age. The only expression disclosed of his desire in the premises is contained in the application to the effect that the beneficiary should be his "legal representatives." The omission to strike out from the certificate the words "related to the insured as  .  .  ." can hardly be considered an expression of an intention that the "legal representatives" should be related to the insured in some one of the authorized classes.    It is plain that these words and blank were part of the printed form and were left unerased through mere inadvertance.    This is altogether too meagre a circumstance, if any at all, to justify an interpretation avoiding a contract which should be liberally interpreted in favor of the insured.

The judgment is affirmed.    *Nortoni, J.,* concurs. *Reynolds, P. J.,* dissents, and as he deems the decision rendered herein contrary to the decision of the Supreme Court in Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670, 94 S. W. 470; State ex rel. v. Vandiver, 213 Mo. 187, 111 S. W. 911; Loos' Guard. v. John Hancock Mut. Life Ins. Co., 41 Mo. 538, and Ewing v. Shannahan, 113 Mo. 188, 20 S. W. 1065, the case will be certified to the Supreme Court, in obedience to the constitutional mandate, for final determination.

## DISSENTING OPINION.

STATEMENT.—On or about the 7th of February, 1903, one Walter L. Leek, of Warrenton, Warren county, this state, became a member of the defendant order and under date of February 7, 1903, defendant

issued to Leek a membership certificate in which it is set out, "that in consideration of the membership fee and one advance assessment, one monthly per capita tax and reserve fund for one month in advance and the representations, statements and answers made in the application for membership, a copy of which application is hereto attached and made a part hereof, the Modern Brotherhood of America issues to Walter L. Leek, of Warrenton, County of Warren, State of Missouri, this membership certificate which entitles him to membership in said fraternity, and in case of the death of said member while in good standing, permits his beneficiary to participate in the mortuary fund to the amount of one full assessment on all members in good standing in the fraternity not to exceed $1000, which shall be paid to legal representatives related to the member as ――― within ninety days after said satisfactory proof of such member's death shall have been furnished by the beneficiary to the board of directors at Mason City, Iowa." The certificate then provides for payment of benefits in case of accident of a limited amount within the $1000, and it is set out that the benefit certificate "is issued and accepted" upon named "express warranties, conditions and agreements." Among these are the following: "This certificate, the articles of incorporation, fundamental laws, by-laws, rules and regulations of the society, now in force, or which may hereafter be adopted, and the application for membership, including the physician's report, a copy of which application and report is hereto attached, shall together constitute the exclusive contract between the society, the member and the beneficiary." Then follow the usual provision about discontinuance of membership for failure to pay assessments, which failure shall render the certificate void. The third paragraph of these warranties, etc., provides among other things: "If the holder of this certificate . . . shall die in

consequence of a duel, or by his own hand, whether sane or insane, . . . then this certificate shall be null and void, and of no effect and all moneys which shall have been paid and all rights and benefits which may have accured on account of this certificate shall be absolutely forfeited." Another clause provides for furnishing proofs of death; another is an inhibition against following certain employments or occupations, and the concluding clause is, that the certificate shall be "subject to forfeiture for any of the causes of forfeiture which are now prescribed in the fundamental laws or by-laws of this society, or for any cause or causes of forfeiture which may hereafter be prescribed by this society by amendments of its said laws."

The member Leek, as was conceded at the trial, died on the date set out in the petition, to-wit, the 14th of June, 1905, in Warren county, Missouri, by his own hand. It was further conceded that the respondent, Ordelheide, was duly appointed administrator of the estate of the member; that he qualified as such and that he had made proper proofs of the death of the member. It was further conceded that defendant is a fraternal beneficiary society; that defendant operates under an incorporation of the state of Iowa, with full authority from the superintendent of the insurance department of the state of Missouri to transact business in Missouri; that that superintendent has been appointed the attorney in fact to accept service under the statute, and that the only issue, so far as the pleadings are concerned, is the question of the liability of defendant under these facts and under the law of its own organization and of this state. Under these concessions and admissions and introducing the certificate of membership in evidence, plaintiff rested.

In point of fact, the petition in the case averred and the answer admitted that Leek committed suicide in Warren county, Missouri, by hanging himself, "but whether sane or insane at the time this plaintiff

is unable to say," says the petition. It was also admitted that at the time of his death Leek had paid all his dues and assessments on the certificate issued to him as aforesaid, and that one full assessment by defendant on all its members in good standing at the time of the death of Leek would amount to more than $1000. Proceeding with its side of the case, defendant introduced the application of Mr. Leek for membership in the order. In it Leek states that he was born in Warren county, this state, the 20th of October, 1880, and that his age at his nearest birthday to the date of his application was twenty-two years, and that he was unmarried. That made him about twenty-four years old when he died. Opposite the question in the application, "Give full name of applicant's beneficiary," is the answer, "Legal representatives." In the application it is further set out that the applicant agrees that in the event of his death by suicide, "whether sane or insane, any certificate that may be issued upon this application by said fraternity shall become void." Defendant, notwithstanding the above admissions, introduced its by-laws, which set out, among other things, that the objects of this brotherhood "shall be the mutual uplifting of the members of our order, the practice of fraternal love as shown by deeds, not words, to lose no opportunity to point out to a falling or weaker brother a path of success, to withhold nothing from a brother that can benefit him and especially to point out to him any danger threatening him or his loved ones, and to bestow substantial benefits upon the family, widow, heirs, blood relations and such others as may be permitted by the laws of the states wherein this Brotherhood shall operate; to take care of the sick and indigent members, and to comfort the sick and bereaved in time of sorrow and distress." The by-laws show beyond question that defendant is organized for benevolence and not for profit, that it

158 App.—44

has representative form of government, lodge system and ritualistic form of work, and that the expenses of the fraternity are defrayed by a membership fee and a per capita tax upon every member thereof, and that it makes provisions for payments in case of death and for payment of sick and other disabilities, assesses and collects from every member of the fraternity through the subordinate lodges and as often as may be required, of such sums of money as are fixed by table of rates hereinafter provided, to pay the death benefits, and benefits to the sick and disabled members, as set out in the certificate. The order has social as well as beneficiary members, the former paying membership fees and dues but no assessments for death losses or accident or relief benefits. Those admitted to beneficiary membership are required to deposit with the secretary the amount of one full benefit assessment, a monthly per capita tax in the sum of fifteen cents, lodge dues for one month, and five cents per each thousand dollars of the face of his certificate for the first month's dues to the reserve fund and shall be liable for all subsequent benefit assessments in accordance with the laws of the fraternity. It further provides that the liability of the fraternity for the payment of benefits on the death or injury of a member shall not begin until all the acts, qualifications and requirements prescribed for the applicant in the several divisions in all the laws, rules, regulations and rituals of the fraternity shall have been fully complied with by him and a benefit certificate issued. Other portions of these by-laws provide for the issue of notice of death and other benefit assessments and service of notice on the members of the levying of them. When proper proof of death or the claimant's legal rights to benefits have been properly executed and passed upon and approved by the proper body, the supreme president, "as soon as the fund on hand will justify, shall draw an order attested by the supreme secretary (payable

Ordelheide v. Modern Brotherhood of America.

to the order of the person or persons found legally entitled thereto), for the amount due upon the benefit certificate of the deceased."

It was admitted that a certified copy of the charter or articles of association of defendant is on file with the superintendent of the insurance department of this state. Counsel for plaintiff, on being asked by the court as to what admission he made on the point said: "Yes, that's a fact; they filed it and complied with the statute, no doubt about that; you can put it in if you like; do as you please about it." Whereupon counsel for defendant offered a certified copy of the articles of incorporation as filed with the proper department of Iowa. It appears by these that the the incorporators associated themselves as a body corporate in law, "for the purpose of organizing a fraternal beneficiary society, under the provisions of chapter 21, Acts of the Twenty-sixth General Assembly of the State of Iowa, approved April 3, 1896, for the sole benefit of its members and their beneficiaries, and not for profit." It is provided in these articles, after giving the name and the location of its principal office, that "it shall have a lodge system with ritualistic form of work and representative form of government;" that provision should be made in the fundamental laws of the order for the payment of benefits in case of death or in case of temporary or permanent physical disability as the result of accident or old age, "provided that no benefits on account of old age shall commence until after the member reaches 70 years of age." Article 3 is as follows: "The fund from which the payment of such benefits shall be made and the expense of said fraternity defrayed, shall be derived from beneficiary calls, assessments and dues collected from its members as provided by its laws, rules and regulations." Article 5 provides for the creation and collection of a reserve fund, "which shall only be used in the payment of

excessive losses as provided by the laws of said fraternity." The sixth article provides that the officers of the fraternity "shall be such as provided for in its ritual and fundamental laws, and its business shall be transacted by the supreme president, supreme secretary and the board of directors consisting of six persons to be elected as provided by law." These articles are dated, and acknowledged the 20th of March, 1897, were filed with the Secretary of State of Iowa the 31st of March, 1897, and a duly certified copy with the insurance department of the State of Missouri on the 31st of July, 1897. They were afterwards amended, changing the location of the principal office to Sioux City, Iowa, the amendment made in October, 1901. That amendment was duly certified to by the secretary of state and a copy was filed with the insurance department of this state the 30th of November, 1901. On the 25th of October, 1905, the superindentent of the insurance department of this state certified "that the above and foregoing is a true and correct copy of the articles of incorporation of the Modern Brotherhood of America as filed in this department the 31st of July, 1897, including the certificate of the Secretary of the State of Iowa," and the amendment to the articles of incorporation above set out, the superintendent of the insurance department of this state further certifying under date of October 25, 1905, that said articles and amendments "have been continuously on file in this department since the above mentioned dates." By a duly executed instrument of date November 1, 1898, the superintendent of the insurance department of this state was appointed and authorized to represent the society as provided by the "Laws of Missouri, 1897, pages 132 and 137," and under date of the 26th of October, 1905, the superintendent of the insurance department of this state certified to the correctness of the copy of the appointment of the superintendent of insurance

of this state "to acknowledge or receive service of process," as having been filed in his office on the 2d of November, 1898, and that it "has been continuously on file in this office since said date."

It was admitted by counsel for plaintiff that defendant has each year and on or before the first day of March thereof, made and filed with the superintendent of the insurance department of the State of Missouri, the annual statement required by section 1411, Revised Statutes 1899 (section 7113, R. S. 1909). The certificate of authority to do business in this state, stamped as "Renewable Annually March 1st," which was offered in evidence, is dated the 1st day of March, 1902, and certifies "that the Modern Brotherhood of America of Mason City, Iowa, has complied with the requirements of the fraternal beneficiary laws of this state, and is hereby authorized, subject to the provisions thereof, to do the business of fraternal beneficiary association, in the State of Missouri until the first day of March, 1903;" and under date of the 13th of April, 1906, the superintendent of the insurance department of this state certified that that authority is still on file in his department.

Defendant then introduced in evidence chapter 21 of the Laws of Iowa, entitled "An act defining fraternal beneficiary societies, orders, or associations, and regulating the same." The first section of that act reads: "A fraternal beneficiary association is hereby declared to be a corporation, society, or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, and having a lodge system, with ritualistic form of work and representative form of government. Such association shall make provision for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness, temporary or permanent physical disability, either as a result of disease, accident or old

age, provided the period in life at which payment of physical disability benefits on account of old age commences shall not be under seventy years, subject to the compliance by members with its constitution and laws. Provided, that this act shall not be construed to include fraternal orders which only provide for sick and funeral benefits."

The second section provides that the fund from which the payment of such benefits shall be made, and the expenses of such association defrayed, "shall be derived from beneficiary calls, assessments, or dues collected from its members."

The third section reads: "No fraternal association created or organized under the provisions of this act shall issue any certificate of membership to any person under the age of 15 years, nor over the age of sixty-five years, *nor unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir, or legatee of such member.*"

Section four reads: "Such associations shall be governed by this act and shall be exempt from the provisions of the statutes of this state relating to life insurance companies execpt as hereinafter provided."

The fifth section provides that on the issue of any beneficiary certificate, a true copy of any application or representation of the member which by the terms of the certificate are made a part thereof, shall be attached, and that the omission to attach it shall not render the certificate invalid but if such association does not comply with this requirement it shall not plead or prove the falsity of any such certificate, and the plaintiff, in order to recover against the association on said certificate, shall not be required to either plead or prove such application or representation.

The other requirements of the Iowa law are to all intents and purposes those of the law of our own state governing beneficiary associations. Among other provisions is a section providing for the reports which shall

Ordelheide v. Modern Brotherhood of America.

be filed with the auditor of state, who, in Iowa, is in charge of insurance matters for that state. Among other facts required to be reported is "total amount paid members, beneficiaries, legal representatives, or heirs." The other provisions of the Iowa statute need not be set out here. It was approved April 3, 1896.

This is all the evidence in the case. The cause was tried by the court without the intervention of a jury, a jury having been waived, and the court found for plaintiff, rendering judgment in his favor for $1076.25. A motion for new trial was duly filed, stating the usual grounds, among others, however, claiming section 7896 of the Revised Statutes of this state, 1899, now section 6945, Revised Statutes, 1909, is a violation of the provisions of the Constitution of this state and of the United States and of the 14th amendment of the Constitution of the United States. This being overruled and exception saved, defendant moved in arrest of judgment, claiming among other things that the court had no jurisdiction of the subject-matter of the action; that the petition does not state facts sufficient to constitute a cause of action; that the judgment should have been for defendant instead of for plaintiff, and upon the record there is manifest error in the judgment. This was also overruled and exception saved, whereupon the cause was appealed to the Supreme Court by defendant. The Supreme Court, in Division No. 1, transferred it to this court on the ground that defendant was not such a party or in such a position as entitled it to raise the constitutional question presented. The opinion and decision as well as a brief statement of the facts in the case will be found reported under the title Ordelheide v. Modern Brotherhood of America, 226 Mo. 203, 125 S. W. 1105. The same constitutional point that was relied on in this case when it was before the Supreme Court was afterwards raised in the case of Dennis v. Modern Brotherhood of America, 231 Mo.

211, 132 S. W. 698, and that case was transferred to the Kansas City Court of Appeals.

We owe an apology to the Supreme Court and to our brethern of the bar for the length and particularity of the statement of facts in this case but we feel justified, in fact compelled, to make it in order to present the questions which we think are for adjudication in a clear and, as far as possible, concise form. We might have relied on the very excellent statement of the facts and of the real points in controversy as set out by the learned judge who delivered the opinion in this case when the Supreme Court ordered it transferred to this court. It is sufficient and covers all points so far as it is necessary to enable that learned judge to state the grounds of the conclusion arrived at by the court, but as we desire to go into what we consider a very fundamental question in the case somewhat more at length, we venture, even at the risk of being charged with prolixity, to submit this statement along with our opinion.

REYNOLDS, P. J. (after stating the facts).— In presenting the views which control us in the determination of this case, we are neither closing our eyes to the decision of the Supreme Court of our state in Schmidt v. Supreme Court United Order of Foresters, 228 Mo. 675, 129 S. W. 653, commonly cited as Schmidt v. Foresters, nor unmindful of the fact that in that case the decision of this court was overruled by the Supreme Court, and that the Supreme Court held that the doctrine announced by the Kansas City Court of Appeals in Huff v. Sovereign Camp Woodmen of the World, 85 Mo. App. 96, and in Brasfield v. Modern Woodmen of America, 88 Mo. App. 208, as well as in Brassfield v. Knights of Maccabees, 92 Mo. App. 102, correctly stated the law and were approved. Accepting the decision in the Schmidt case as conclusive on the point there in judgment,

we shall venture to suggest a view of our law governing life and accident insurance companies and our law governing fraternal beneficiary associations, which in our opinion has, although possibly presented by counsel, never been distinctly decided by our Supreme Court. We shall also endeavor to make clear our reasons for holding that the decisions of the Kansas City Court of Appeals in the cases of Herzberg v. Modern Brotherhood of 'America, 110 Mo. App. 328, 85 S. W. 986, and Dennis v. Modern Brotherhood of America, 119 Mo. App. 210, 95 S. W. 967, are out of line, and shall endeavor to show that the conclusion arrived at by us here is entirely in line with the decision of our Supreme Court in Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670, 94 S. W. 470; State ex rel. v. Vandiver, 213 Mo. 187, 111 S. W. 911, and with other cases to which we shall hereafter refer. We have heretofore certified the case of Armstrong v. Modern Brotherhood of America, 132 Mo. App. 171, 112 S. W. 24, to the Supreme Court, on the ground that the views therein expressed are in conflict with the judgment of the Kansas City Court of Appeals, given on a like question in the case of Dennis v. Modern Brotherhood of America, supra, as well as other decisions of that court cited in the Armstrong case.

While in several of the cases above named, this same defendant, the Modern Brotherhood of America, was the defendant, and the certificates in issue are alike, so far as concerns the body of the certificates, this case at bar arises over a certificate in which the beneficiaries are designated as the "legal representatives" of the member, and the party suing to recover on the certificate is the administrator of the estate of the member. In the light of prior reported decisions, particularly that of Schmidt v. Supreme Court United Order of Foresters, it was hardly necessary to set out the laws of this state or those of Iowa, or the provisions

of the articles of association and by-laws of the defendant corporation, or the terms of the membership or benefit certificate issued. We have done so for the purpose of emphasizing the fact that the defendant is a fraternal beneficiary association, pure and simple, is incorporated as such under the laws of Iowa, is operating under the laws of that state as that character of association, and was admitted, and for many years has transacted business in this state as a fraternal beneficiary association, certified by the superintendent of the insurance department of this state to be a fraternal beneficiary association, authorized to transact business as such in this state. It was admitted in the progress of the trial of the case, that from the time of the admission and entering upon business by the defendant in this state in March, 1897, the defendant corporation has, in each year, and on or before the first day of March thereof, "made and filed with the superintendent of the insurance department of the state of Missouri, the annual statement required by section 1411, Revised Statutes of Missouri, 1899." That is now section 7113 of the Revised Statutes of 1909. It is also in evidence and not disputed, that the renewal of authority to do business in this state as a fraternal beneficiary association had been issued and was held by the defendant corporation, of date March 1, 1902, in and by which the then superintendent of the insurance department of this state certified that the defendant was authorized to do the business of a fraternal beneficiary association in this state until the first day of March, 1903. The certificate involved in this case was issued or bears date the 7th day of February, 1903, so that, as held in Schmidt v. Supreme Court United Order of Foresters, supra (l. c. 700), the determination of the rights of the company to do business in this state and the obligations which it incurred by here doing business, turns upon the fact that at the time when it issued this certificate, which was issued in this state,

it had brought itself under the laws of this state. This was the point upon which our court, in Schmidt v. The Foresters, 124 Mo. App. 165, 101 S. W. 625, differed from the Kansas City Court of Appeals, as that court had ruled in the Huff case and in the two Brasfield cases, and in which ruling our Supreme Court agreed in the Schmidt case, 228 Mo., supra. Applying the decision of our Supreme Court in the last cited case to the facts in the case at bar, when on the 7th of February, 1903, the defendant corporation issued its certificate of membership to Walter L. Leek in Warren county, in this state, it was authorized to do business in this state as a fraternal beneficiary association.

It is also conceded that from the time of its admission and authority to do business in this state as a fraternal beneficiary association, it has complied with all the statutory requirements of this state necessary to enable it to continue its business in this state. That is, the superintendent of the insurance department of this state was its authorized attorney or agent for service upon it of process, it regularly made the reports required by law to be made annually; and its authority to do business in this state as a fraternal beneficiary association was renewed annually.

It is also without dispute in this case, that the member committed suicide, and that in his application for membership, Leek agreed that in the event of his death by suicide, sane or insane, any certificate issued upon that application by the defendant would be void. Futhermore, it is set out in the certificate itself that if Leek should die by his own hand, whether sane or insane, then that certificate should be null and void and of no effect and all moneys which shall have been paid and all rights and benefits which may have accrued on account of the certificate shall be absolutely forfeited. It further appears by the application of Leek, that at the time of the issue of the certificate,

he was unmarried. There is no suggestion that he married or was engaged to marry between that date and the date of his death. He was then a young man about twenty-two years of age. It is said by counsel for appellant in their brief, that the record fails to show that Leek had any blood relatives or dependents living at the time the contract was entered into, who might become proper beneficiaries under our law. Counsel for respondent meet this statement with the counter statement, that the absence of proof on the point raises no presumption that there was neither a family, blood relatives or dependents.' We take it that if any presumption is to be indulged in, it is that every member of the human family has had a father and mother and that he has some blood relatives, although they may be remote. This is beside the question in the case. The real point of the argument is that the member having designated no members of his family or dependents or fiancee, as entitled to the benefits of his membership in case of his death, but having designated his "legal representatives" as his beneficiaries, and the association having issued to him a certificate accordingly, has issued an ordinary life insurance policy, it being claimed that "legal representatives" means the executor or administrator, and may mean assigns, and that under our law that cannot be lawfully done by a fraternal beneficiary association. Furthermore, that the Iowa law and defendant's by-laws authorize the designation of a legatee as beneficiary, and that this cannot be done under our law by such association.

Does the term "legal representatives," when that term is used in such certificates, or in life policies, necessarily mean administrator or executor?

In the case of Renfro v. Insurance Co., 148 Mo. App. 258, l. c. 263, 129 S. W. 444, in the certificate of membership, the blank to be filled up with the "name of beneficiary and relationship to the insured," was

filled with the one word, "Estate." It was there claimed by the insurance company, that the benefit accruing on the death of the member should go to the administrator to be appointed on her estate and not to the son, who was the only surviving child and next of kin to the member. We there held, on an examination of the authorities, that where the name of the person for whose benefit the insurance is obtained, does not appear upon the face of the certificate or policy, and if the designations used are applicable to several persons, or if the description of the beneficiary is imperfect or ambiguous, so that it cannot be understood without explanation, extrinsic evidence may be resorted to, to ascertain the meaning of the contract. Among other authorities relied on for that was 1 Bacon, Benefit Societies and Life Insurance (3 Ed.), sec. 263. Another was Joyce on Insurance, where in section 776, vol. 2 (Ed. of 1897), that author says that a question often arises where the proceeds of a benefit certificate are payable to the "estate" of the insured, whether the fund shall be subject to the claims of creditors; and he states that in the consideration of this point, the laws of the society, where it is a benefit certificate, the whole statute, contract, the constitution, etc., of the order, the terms of the certificate, and the intentions of the parties, must be considered.

In Loos' Guard. v. John Hancock Mut. Life Ins. Co., 41 Mo. 538, our Supreme Court, Judge WAGNER delivering the opinion, held that where a policy was payable to the assured, his heirs or representatives, that while the term "representatives," in general and a professional or technical sense, simply means executors or administrators, "they are often construed differently, if it is clear that the intention was to vest the estate in a different class of persons;" that these words "legal representatives," will ordinarily be taken to mean executors and administrators, "where nothing is shown to raise a counter presumption, but the mean-

ing is not so inflexibly attached as to prevail in all cases when it is manifest that another disposition was intended. . . . The words have therefore been held to mean 'next of kin' when the circumstances of the case made it apparent such a construction would effectuate the object had in view."

In Ewing v. Shannahan, 113 Mo. 188, l. c. 194, 20 S. W. 1065; and Elstroth v. Young, 83 Mo. App. 253; and In re Reisenberg, 116 Mo. App. 308, l. c. 312, 90 S. W. 1170, the term "legal representatives" was held to mean "heirs."

In Pace v. Pace, 19 Fla. 438, the policy was written for the benefit of the estate of the insured, and it was held that under the circumstances of the case the terms referred to meant for the benefit of a minor child. This Florida case refers, in support of its position, to Loos' Guard. v. Ins. Co., supra, and Globe Ins. Co. v. Boyle, 21 Ohio St. 119.

The Supreme Court of Illinois has held: "It is well known this term (legal representative) does not always have the same signification. Legal representative, or personal representative, in the commonly accepted sense, means administrator or executor. But this is not the only definition. It may mean heirs, next of kin or decendants. . . . The sense in which the term is to be understood depends somewhat upon the intention of the parties using it, and is to be gathered, not always from the instrument itself, but as well from the attending circumstances."

The Supreme Court of Tennessee has held that the term "legal representatives," used in an insurance policy designating the beneficiary thereof, cannot be held to mean the executor or administrator of the insured so as to give them a beneficial interest in the policy but the words must be held to designate those who under the laws succeeded to the personal estate of the insured. [Rose v. Wortham, 95 Tenn. 505, 32 S. W. 458.]

The Supreme Court of Minnesota, in Schultz v. Citizens Mutual Life Ins. Co., 59 Minn. 308, 61 N. W. 331, held that the words "legal representatives" in a life insurance policy would be construed as meaning heirs or next of kin whenever it is apparent from the context of the subject-matter that they were used in that sense. "They will be construed in that way more readily in policies of life insurance than in almost any other kind of instrument for the reason that such insurance is very commonly intended as a provision for the family of the insured."

In Allen v. Stovall, 94 Tex. 618, 63 S. W. 863, the words "legal representatives," are construed to be synonymous with "heirs."

In Masonic Mut. Relief Assn. v. McAuley (D. C.), 2 Mackey 70, the term "legal representatives" was construed to mean those who are the legal representatives in contemplation of the by-laws and charter of the association, namely, "the very people who are there enumerated, 'the widows, orphans, heir, or legatee.' "

In Leonard v. Harney, 71 N. Y. Supp. 546, the term "legal representatives," where the policy was payable to the "legal representatives or assigns," was held to be capable of construction as meaning the testator's wife, in her personal capacity when the policy was bequeathed to the wife.

In Hodge's Appeal, 8 W. N. C. 209, 9 Ins. L. J. 709, the words "heirs and legal representatives," as used in the by-laws of a life insurance company describing the beneficiaries, are regarded as equivalent to next of kin and the fund was held not to be a part of the assets of the estate of the insured.

In In re Conrad's Estate, 89 Ia. 396, a decision by the Supreme Court of the state under which the defendant corporation was organized and from which it derives its life, it is held that a clause in a life insurance policy providing for the payment to the wife of the insured or her legal representatives, does not mean

her administrator but some one appointed by her to receive the fund. "Legal representatives" in its broadest sense, that court held to mean, one who was lawfully representing another in any matter whatever, and where the wife was not living when the policy matured and her children were also dead, the money due thereon was not part of her estate, but the fund was held to pass down the line of descent to her grandchildren.

It cannot be held, therefore, that the mere designation as the beneficiary in this case of the "legal representatives" of the member as his beneficiary, means his administrator, as it appears to us, namely, that under the laws of our state these policies are neither assignable nor do they go into the estate of the deceased, but must go to some one of blood kin, to the heirs or to the affianced husband or wife, and it is distinctly set out in the by-laws of this defendant, which we have heretofore noted, that the objects of this brotherhood are, among others, "to bestow substantial benefits upon the family, widow, heirs, blood relations *and such others as may be permitted by the laws of the state wherein this Brotherhood shall operate.*" Interpreted by this, therefore, and by the obvious aims and objects of this association, it seems clear that when the member designated as his beneficiary his legal representatives, in contemplation of law he meant his blood relatives. While it may be that his administrator has the right to collect the fund, whether he could hold it as administrator would be questionable.     Beyond question the fund cannot be made subject to the payment of the debts of the deceased number, if any creditors should demand it, for so our law says (sec. 7120, R. S. 1909.) The administrator would be bound, upon the appearance of blood relatives, next of kin, or heirs of the member, to turn over the proceeds, if he succeeded in collecting, to those persons, according to our law of descent and distribution, to the exclusion of creditors.     [Grand Lodge v. Dister, 77 Mo. App. 608; Beall v. Graham,

125 Mo. App. 38, 102 S. W. 636.] Hence the designation of "legal representatives," as the beneficiary, in our opinion, does not in itself, throw this certificate of membership outside of the class of contracts which fraternal beneficiary associations may issue, and does not, in that, place it in the class of life insurance contracts or policies.

That our Legislature itself, in the very same article which provides for the creation and organization of fraternal beneficiary associations and which requires reports from those of other states transacting business in this state, has used the term "legal representatives," when speaking of the beneficiaries who may be designated by the member in his certificate or application, as covering the class of persons who may lawfully be designated as beneficiaries, is apparent when we read section 7113, Revised Statutes 1909, section 1411 of the revision of 1899. Prescribing the answers which must be made by the officers of these fraternal beneficiary associations in their report to the Superintendent of the Insurance Department of this state, the sixth question required to be answered is, "total amounts paid members' beneficiaries, legal representatives or heirs." The beneficiaries named in the statute, outside of heirs, are "families," "blood relatives," "affianced husband or affianced wife," or "persons dependent upon the member." So that our law-makers themselves in this subdivision of section 7113, and in the very same statute regulating this kind of business, covered all permissible beneficiaries by the term "legal representatives or heirs," and obviously did not use the term "legal representatives" as covering executors, administrators or assigns. To the contrary it covered the families, . . . blood relatives, affianced husband or affianced wife of, or . . . persons dependant upon the member," under the terms "legal representatives."

158 App.—45

Interpreted by the by-laws, by the objects of the association, by the law of this state, particularly this section last referred to, when the term "legal representatives" was used by this member in designating his beneficiary, he must be held to have meant such persons as could lawfully become "legal representatives" in a benefit certificate of that kind under the laws of this state.

It will hardly be contended that because the administrator has brought this action, that any question of his right to do so, or to maintain it, is settled, or that it closes inquiry as to whether, as administrator, he is the legal representative of the deceased member. The learned counsel for respondent seems to argue that this question cannot be raised here because no attack on the right of the administrator to bring the action was set up in the lower court, citing among other decisions Benne v. Schnecko, 100 Mo. 250, 13 S. W. 82. In the above cited case, at page 257, it is said: "If the suit were not properly brought, there was no objection taken either by demurrer or answer as to plaintiff's capacity to sue, and so any such objection, even if existing, was waived." That was a case where the action was brought in the name of an assignee for the benefit of himself and the other surety. It was claimed in that action that the plaintiff was only entitled to a lien under a judgment until he proves an existing indebtedness, and that he was not the real party in interest. That class of cases has no application to the one at bar because the right of this administrator to sue is challenged, not on the ground that he is not the administrator, but on the ground that as administrator, he has no right of action whatever under this policy. That right is distinctly challenged by the answer which was interposed to the petition in the case.

Our learned brethren of the Kansas City Court of Appeals held, in Herzberg v. Modern Brotherhood of America, 110 Mo. App. 328, 85 S. W. 986, referring

to this same defendant, that it was not authorized to do business or issue membership certificates in this state as a fraternal benefit association because by its contracts it allowed the member to designate that members' legal representatives as the beneficiary. For the reasons above stated we are compelled to differ from the conclusion arrived at by our learned and esteemed brethern of that court.

In the other case against this same defendant, Dennis v. Modern Brotherhood of America, 119 Mo. App. 210, 95 S. W. 967, the Kansas City Court of Appeals held that a foreign association, to do business in this state, must have for its object the benefit of the same class of beneficiaries named in our statutes and that the Iowa statute is radically different from that of Missouri in that it permits legatees as well as legal representatives to be beneficiaries. The learned judge who wrote the opinion in the Dennis case, at page 217, quoting from the decision of this court in Loyd v. Modern Woodmen of America, 113 Mo. App. 18, 87 S. W. 530, to the effect, "if other classes were designated in the Illinois act in its Missouri business, the defendant being on the same footing as domestic fraternal societies, could not make any class of persons beneficiaries not named in the Missouri law," and the learned judge of the Kansas City Court of Appeals, quoting this, refers to it as a mere passing remark and *obiter*, and then proceeds to limit the application of the doctrine announced by that court itself in Pauley v. Modern Woodmen, 113 Mo. App. 473, 87 S. W. 990. There it was held that the fact of the statute of the foreign state differing from ours in that the former permitted a member who had neither wife nor children to make a charitable institution a beneficiary, a thing not permitted by our statute, did not make this an unconditional provision; that it was a condition which could only become effective with the consent of the society, and did not have the effect to evade the pro-

visions of our statute, and hence would not be held as disabling the association from doing business in this state as a fraternal benefit society. Judge ELLISON concludes, in disposing of this matter, that the decision in the Pauley case will not be followed in the Dennis case, because, as he remarks, the foreign statute under consideration in the Dennis case provides for beneficiaries which, if named, would take the fund away from the person our statute has seen fit to provide for and protect. It is further set out in the opinion in the Dennis case that the contention there made by defendant fails to distinguish between associations and the business which such associations may do, the Kansas City Court of Appeals saying (l. c. 215): "Our statute relieves the burden of taxation, disability to defend on account of suicide, etc., from certain described classes of associations and not certain classes of business. So that if the association does not answer the description given in our statute, it is not relieved of such burdens, regardless of who may be the beneficiary in any particular case. . . . It has not left them (beneficiary associations) free to insure lives generally, but only certain persons for purposes specifically designated. It has not given the member of such association freedom of choice as to whom he will make a beneficiary further than a choice between the persons or classes named in the law." Commenting on the fact that the Iowa statute includes legatees and legal representatives of the members, as classes who may be beneficiaries but who are not permitted to be such in our state, the learned judge of the Kansas City Court of Appeals says (l. c. 216): "Suppose a foreign association was permitted by the state where organized to have many different classes of beneficiaries, some of which our Legislature would think put its solvency to hazard, and only one of which was permitted by our statute, would the mere fact that it confined its business in this state to that one, entitle

it to a footing here of complete equality with a domestic association and like the latter, among other exemptions, be free from taxation? We think not. And, therefore, while the foreign association may do business in this state, it is not entitled to the privileges of a local association, nor to exemption from certain provisions of the general life insurance law which the latter enjoys."

It is from this view of the case and of the law that we are compelled, with the most profound respect for our brethren of the Kansas City Court of Appeals, to radically differ. It seems to us that that conclusion is illogical, and not supported by authority. Furthermore, when we have a case before us similar to the supposed case, it will be time enough to pass on it. It is not pretended here that only one of the classes of beneficiaries allowed by the Iowa law is allowed by the Missouri law. To the contrary, construing the term "legal representatives" as we do above, there is but one class, namely, "legatees" allowed in Iowa and not designated here. Furthermore, while the Iowa law permits the designation of a legatee as a beneficiary, our law permits the designation of the affianced husband or wife and "persons dependent on the member." So it is broader than the Iowa law. Judge BLACK, speaking for our Supreme Court in Hanford v. Mass. Ben. Assn., 122 Mo. 50, 26 S. W. 680, considering whether the defendant there lost its character as an assessment company by the fact that part of its revenues were derived, not from assessments, but were fixed sums, held that our statute is not to be given a narrow construction, but is broad enough to cover the mode of business there adopted. This case, as well as others of like tenor, was distinctly affirmed by the court in banc in Aloe v. Fidelity Mut. Life Assn., 164 Mo. 675, 55 S. W. 993, after having been overruled by division No. 1. Why should a broad view be taken of assessment insurance companies and a

narrow and technical one be taken of fraternal beneficiary associations? Is it to be assumed that because these associations admit to membership in them one class of persons, which they designate as beneficiaries, other than those allowed by our law, that such association thereby loses its exemption from taxation for instance? Are we to hold this association liable to taxation on its collected assessments?

There is no pretense of any proof in this case that if the member designates a legatee as a beneficiary, that this defendant would recognize such designation if it was of one outside the designated class. A legatee is never an assignee. The fact that the beneficiary may be designated by the last will and testament of the member, by no manner of means and by no possible construction, can be held to mean that in designating a legatee, the member has made an assignment of an interest in his policy. Is it not more fair to presume right dealing than wrong? That following the provision of our own law on the matter, the legatee designated will be, if not of the blood, a person "dependent upon the member?" Taking those words by themselves and remembering that our law allows the affianced husband or affianced wife to be designated as beneficiaries, it seems to us that our own law includes a much larger classification than the Iowa law, and we are unable to see that by the provisions in the Iowa law, the beneficiary to be designated by a last will and testament, that is a legatee, that the risk and liability, the pecuniary resources of the company are to be any further drawn on under the law of Iowa than permitted under the law of Missouri.

As before noted, "the objects of this brotherhood shall be the mutual uplifting of the members of our order, . . . to bestow substantial benefits upon the family, widow, heirs, blood relations and such others as may be permitted by the laws of the states wherein this brotherhood shall operate." The other

objects are entirely social. By becoming a member of the association, every member has, in the language of our Supreme Court in Ewing v. Shannahan, supra (l. c. 195), shorn himself of all power to either assign the benefits or designate as legatee any one who does not fall within the classes above designated by the Iowa law, and when his certificate and membership is determinable, as here, by our laws, if he designates a legatee as beneficiary, that legatee must be of the class permitted under our law. It cannot be made otherwise by any act of his. [Ewing v. Shannahan, supra.]

We have before remarked upon the fact that it is specifically provided in the by-laws of this association that the objects of this brotherhood are, among others, "to bestow substantial benefits upon the family, widow, heirs, blood relations and such others as may be permitted by the laws of the state wherein this brotherhood shall operate." The benefit certificates can be issued alone in aid of families and dependents and not for profit. To that extent our law allows them to do assurance upon lives. That far and no farther. So that if it be said that it is unlawful to provide in this state that the beneficiary may be the legatee, then under the by-laws of this very organization, benefit certificates or membership certificates issued to members of the organization in this state, cannot be extended beyond the classes named in our statute. It would seem to follow that any attempt of the member to do that, or of the society to allow it, would simply be entering into a contract that is unlawful under the laws of the state where made.

As a foreign corporation admitted to do business in our state, this defendant can transact no business in this state which a domestic corporation of like character cannot transact, anything in its charter to the contrary notwithstanding. If its charter "contains

a grant of power not allowed by our law, that grant will be treated simply as if /it had not been made." [State ex rel. v. Cook, 171 Mo. 348, 1. c. 362, 71 S. W. 829.]

It is argued that by admitting legatees among the beneficiaries who may be named, the liabilities of the association may be indefinitely extended—its solvency affected. Our law has placed this matter of solvency in charge of a designated officer of the state, the superintendent of the insurance department of the state. [State ex rel. v. Vandiver, 213 Mo. 187, 111 S. W. 911.] Until he either excludes the company, or brings proceedings against it for that cause, the courts will hardly act on a mere suggestion of hazard.

In McDonald v. Life Assn., 154 Mo. 618, 55 S. W. 999, our Supreme Court has said that the certificate of the state superintendent of insurance, authorizing a company to do business as an assessment company, does not determine the character of insurance the company actually does and that the policy determines that. But it is to be said that in many other cases our Supreme Court has said that while the certificate of the superintendent of the insurance department is not conclusive of the character of business done, nor even the certificate issued by the company itself, yet in the Schmidt case, it has distinctly held that the certificate issued by the association is to be construed in connection with the laws of this state, the laws of the state of the organization of the association, and the constitution and by-laws and articles of the association.

In the Westerman case it is said (1. c. 707): "The practical construction of the statutes applicable to the insurance laws of this state, given by the department of state government which has the direct supervision of the insurance department of the state, as well as the manner of all insurance companies and other associations in conducting the business of insurance in which they are engaged in this state, should not be

ignored." Again at page 709, it is said, quoting from Ross v. Railroad, 111 Mo. 118, 1. c. 25, 19 S. W. 541: "While the rulings of such officers (executive officers of the state) are not conclusive upon the courts, still their construction of the law is entitled to weight, especially where there is doubt as to the meaning of the law." And Judge BLACK, in Ross v. Railroad, supra, quoting from Endlich on Interpretation of Statutes, section 360, from which the above is taken, says: "But of almost equal dignity is the practical construction put upon an act by the governmental officers particularly charged with its execution, especially where so long continued as to have grown into a rule of departmental practice. Thus the construction of a statute adopted and acted upon by the executive, . . . or by the secretary of the treasury; or the construction of a general insurance law of a state by its attorney-general and other officers required to act under it, will, in cases of doubt and ambiguity . . . be adopted by the courts; or at least, not disregarded by them, except for cogent reasons." Further along at page 720, in the Westerman case, Judge Fox says: "The constitution, laws and rules of the defendant fraternal beneficiary association is the very source of power to make the contract and benefit certificate which is involved in this proceeding."

We hold, therefore, that the question of the right to transact business in this state, is in the first instance committed to the administration, discretion and control of the superintendent and as he has certified that during the period in which this certificate was issued, this defendent was authorized to do business in this state as a fraternal beneficiary association, we should not lightly ignore that certificate.

But, granting that the certificate of the superintendent of insurance is not conclusive as to the character of business this defendant actually is engaged in, the question that we, as a court, must determine in this

case, rests on the definition of a fraternal beneficiary association, as such associations are defined by the laws of our state. As to that, we can do no better than to follow the lead of our Supreme Court in Westerman v. Supreme Lodge Knights of Phyias, supra. There that able and accurate judge and logician, the late Judge Fox, beginning at page 701, has said: "It is only essential to constitute the defendant a fraternal beneficiary association that it be organized for the benefit of its members and not for gain or profit. It must have a representative form of government and ritualistic form of work; having these essential requirements such association is authorized to issue benefit certificates to any of its members and it is by no means a condition precedent to make it a fraternal beneficiary association as contemplated by the statute, that it shall issue such certificates to each and every one of the members of the association. The true test as to whether this is a fraternal beneficiary association is, is it formed or organized and is it carried on for the sole benefit of its members and their beneficiaries and not for profit? Has it a lodge system with a ritualistic form of work and a representative form of government?"

In that case it is to be remembered that inside of the ranks of the society itself, was an endowment rank, the business of which was confined exclusively to the issue of insurance policies. The fact that these policies are not issued or the business conducted for gain or profit, was the test that Judge Fox applied. On the application of that test to the Knights of Pythias he held, in an opinion for the court in banc, concurred in by Judges GANTT and BURGESS in full, by Judge LAMM in the result, not concurred in, however, by Judges Brace and VALLIANT, and Judge GRAVES not sitting, that this fact did not take the association out of the class of fraternal beneficiary associations nor constitute its certificates of membership life insurance contracts or prevent those contracts from

being the contracts and agreements which under our law constitute fraternal beneficiary insurance. In the cases which have followed this, this part of the opinion has been concurred in so far as we know, by all of the judges of our Supreme Court. In the case at bar no question whatever is made over the fact that this society defendant is organized and its business carried on for the sole benefit of its members and their beneficiaries and not for profit. That it has a lodge system with ritualistic form of work and representative form of government and that it makes provision for the payment of benefits in case of death to those of kin or dependent on the member, and may make provisions for the payment of benefits in case of sickness, temporary or permanent disability, either as the result of disease, accident or old age, is not denied. Furthermore, under the Iowa law it is provided, exactly as it is under our section 7109, Revised Statutes 1909, that the period in life at which physical disability benefits on account of old age commenced shall not be under 70 years, subject to their compliance with its constitution and laws. Furthermore, it is apparent and beyond controversy, in fact conceded, that in the case at bar the fund from which the payment of such benefits shall be made by this defendant and the fund from which the expense of such association shall be defrayed, shall be derived from assessments or dues collected from its members. These things appearing in the organization of the defendant association or society constitute it a fraternal beneficiary association under our law. Can it be that benefits may go to "legal representatives," as we have construed that term, or to legatees, makes this defendant any less a fraternal beneficiary association than did the form of benefit certificate in the Westerman case? We do not understand the decision in the Westerman case, or for that matter in any case in which the point has been considered and decided by our Supreme Court, to hold that

the classes to which the payment of death benefits may be. made or shall go, enters into the constitution of the order itself. To illustrate, we have the organization in itself, the law defining what acts shall go into and constitute the organization, and following that we have a designation by law of the direction which the fund or benefit shall take, the latter not pertaining to the organization itself but being a limitation upon the powers of the organization and of its members. It cannot be a fraternal beneficiary association unless it is carried on for the sole benefit of its members and their beneficiaries and not for profit. It must have a lodge system with ritualistic form of work and representative form of government; it shall make provision for the payment of benefits in case of death, sickness, physical disability as the result of disease, accident or old age, and the fund from which the payment of the benefit shall be made and from which the expenses of the association shall be defrayed, shall be derived from assessments or dues collected from its members. When these things are present, the organization is complete and it is a legally constituted fraternal beneficiary association as known to our law. If after that organization, or with this organization, it allows its members to divert the benefits to a class not contemplated by our statute, does it lose its corporate character as a fraternal beneficiary association? It may be that it has excerised a franchise not given to it by the statute. It would seem that when it does that it either forfeits its charter and right to do business entirely or it will be restrained in the exercise of this particular power, which is outside of its franchise. If it has no object other than the one object of conferring benefits on an unauthorized class, it would seem that its franchise should be taken away entirely. If among the authorized acts and line of business which it is carrying on, it is merely usurping the power to do something which is not within its franchise, it forfeits its right to

do that particular thing, but does not thereby necessarily lose its franchise altogether. For illustration, see State ex inf. v. Lincoln Trust Co., 144 Mo. 562, 46 S. W. 593, in which case it was held that the trust company was usurping a franchise not granted to it when it received moneys by way of general deposit and paid them out on demand on the check of the depositor, in such a way as to thereby establish the relation of debtor and creditor between such conpany and the depositor; that trust companies cannot act in such matters as a banking institution. There our Supreme Court, in banc, held that judgment of ouster would properly go, not as to the whole franchise but that as to such powers as were legally possessed and exercised by the company, it might still be carried on, and that the judgment of ouster should go only from the exercise of franchises not granted.

In State ex rel. Attorney General v. Merchants' Exchange Mutual Benevolent Society, 72 Mo. 146, where it appeared that the sole business of the society was that which our Supreme Court designated as life insurance, judgment of ouster against the exercise of any franchises by the corporation was awarded.

Over and above all, however, we are unable to understand how the fact that this society or association can be held to be a life or accident insurance company under our laws and so subject to the provisions of section 6945, Revised Statutes 1909. To repeat this oft quoted section, it reads: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

In the Westerman case our Supreme Court held the non-forfeiture sections of the insurance laws as applicable to what are called old line or regular insurance companies alone. This too, although the non-forfeiture law, while passed at the same session at which the revision of 1879 of our statutes was made, was passed as a separate act, being entitled, "An act to control the forfeitures of life insurance policies," and containing four sections. This act was approved May 19, 1879. (See page 130, Session Acts, 1879.) But we are driven to no such rule of construction as to section 6945, the suicide section. That section appeared in the Revised Statutes of 1879, as section 5982. It was section 63 of the act approved May 24, 1879, which was passed as a distinct act entitled, "An act to revise and amend the insurance laws of the state of Missouri." While this act does not appear in this shape in the Session Acts, 1879, a reference to the files of the Secretary of State will show that this is a correct statement of the fact. This act appears in the revision of 1879 as chapter 119. It is divided into five articles. The first section of the act in the revision of 1879, commences with section 5920 of that revision and goes to and includes section 5937. Those sections in the revising act are Article I, sections 1 to 18 inclusive, and are under the title, "Insurance Department." Article II is headed, "Life Insurance—Organization of Life Companies," and goes from section 5938 to 5982. The four sections of the non-forfeiture act are included as sections 5983, 5984, 5985 and 5986. As before noted, these four sections comprising the non-forfeiture act were not in the revising act but were passed as a separate enactment. Article II of the revising act entitled, "Life Insurance," ending with what was section 63 of that act, the suicide clause, which appears as section 5982 of the revision of 1879. The third article of the revising act was entitled, "Insurance Other Than Life." The fourth article

was entitled "General Provisions," and the fifth article was entitled "Taxation of Insurance Companies." That will be found to be in the revision of the insurance laws of this state of 1879.

By reference to pages 1667, 1668, in volume 2, Revised Statutes 1879, it will be seen that the Secretary of State, or the compilers of the revision, have included a list of the unrevised bills found in that revision, and it is there said at page 1667, that "the subjects embraced in the chapters of this volume, named below, were not passed in the form of revised bills, but the existing laws, as contained in the general statutes and session acts, have been arranged and collated as they appear under their respective titles. All of the remaining chapters were passed as revised bills." It will be noted that chapter 119, relating to insurance is not in the list of "unrevised bills." Hence it appears in the revision of 1879, as is also so in the case of unrevised bills, without any title of the bill being given, or the sections or even arrangements of the revised bills being reserved. A reference to the files of the Secretary of State, however, will establish the accuracy of what is here said.

So that as a matter of contemporary history, it is to be noted, first, that the suicide clause was part of Article II, headed and particularly relating to life insurance companies; in the next place, life insurance companies, as known to our law makers in 1879, did not include these fraternal beneficiary associations. No company organized as a beneficiary association could transact business as a life insurance company under our insurance statute as it was enacted in 1879.

It is not only unnecessary but would be wearisome to go into and trace the development of our insurance laws. Nor is it necessary to call attention to the fact that what is called fraternal or benevolent insurance existed long before 1869 when our first general insurance laws were enacted. This court in State ex rel.

v. Citizens' Benefit Assn., 6 Mo. App. 163, our Supreme Court in State ex rel. v. Merchants' Exchange B. A., supra, again in Hanford v. Mass. Ben. Assn., supra, in the Aloe cases, in the Westerman case, in the Vandiver case, and in the Schmidt case have gone over all this ground time and again.

It is clear that this suicide clause, section 63 of the revising act, 5982 of the Revised Statutes of 1879, section 6945 of our present revision, has no relation whatever to any but life or accident insurance companies proper, and the contracts there referred to were exclusively and entirely the contracts of such companies and not those of fraternal benficiaries societies or associations—associations then unrecognized by our law. To engraft this suicide clause or suicide section into the contracts of corporations organized under the laws of the state of their creation as fraternal beneficiary societies, empowered by their articles of association to act and transact and carry on business as such, distinctly providing by their own constitution and by-laws and by the certificates which they issue, in the view to the law of their organization, only authorized to do business in this state as fraternal beneficiary associations, is to turn the courts from judicial into legislative bodies, and instead of confining them to their constitutional powers, ample as those powers are, as interpreters of the law, to constitute them in effect, law makers; a thing antagonistic to all our theories of government, state and national, and which our Supreme Court has always refused to do.

How can it be possible, if these associations are outside of our law, as they are said to be, that they can do any insurance business or make any enforcible insurance contracts whatever in this state? They have no authority under the certificate given to them by the superintendent of the insurance department to do other than fraternal beneficiary association business. If they engage in any other, if they undertake

to do life or accident insurance business in this state as regular, old line companies, without authority from the superintendent of the insurance department of the state, the corporation itself, its officers and agents subject themselves to the penalty of the law.

Section 7040, Revised Statutes 1909, is a distinct prohibition against any company transacting in this state, any insurance business, unless it has first procured from the superintendent of the insurance department of this state, a certificate stating that the requirements of the insurance laws of this state have been complied with, authorizing it to do business, that certificate to be renewed annually.

Section 7041 extends the prohibition to any individual or association of individuals, under any style or name, enacting that they shall not be permitted "to do the business mentioned in this chapter within the State of Missouri, unless he or they shall first fully comply with all the provisions of the laws of this state governing the business of insurance."

Section 7049 provides that any person who for compensation acts or aids in the negotiation of contracts of insurance or affecting insurance, who shall act without proper authorization from the superintendent of the insurance department shall be deemed guilty of a misdemeanor and on conviction shall be fined.

Section 7053 provides that any person acting as agent or solicitor for any association or corporation engaged in insurance business before that corporation shall have been duly authorized and licensed by the superintendent of the insurance department to transact business in this state shall be fined or imprisoned or both.

Section 7054 provides that any association of individuals or any corporation transacting in this state "any insurance business, without being authorized

158 App.—46

by the superintendent of the insurance department of this state so to do, . . . shall be liable to a penalty of $250 for each offense."

These are all aimed at the doing of life or accident business by companies or individuals. Long ago this court, in State ex rel. Circuit Attorney v. Citizens' Benefit Assn., supra, and the Supreme Court in State ex rel. Attorney General v. Merchants' Exchange Mutual Benevolent Society, supra, held that the business of making insurance upon lives cannot be carried on in this state without the grant of a franchise for that purpose. In the face of this we are told that this defendant must be assumed to be issuing ordinary life policies and doing regular life insurance business in this state, and that our laws applicable to the policies of insurance companies, apply to its policies or certificates.

How possible to hold, in the light of these provisions of the statutes, that any association, whether foreign or domestic, may lawfully do business in this state without complying with the laws of the state governing that particular business, we confess ourselves unable to see. It is to be noted that by an act approved March 30, 1911 (Session Acts, 1911, p. 284), article IX of chapter 61, Revised Statutes 1909, relating to these associations has been repealed and a new article adopted in lieu thereof. While this cannot apply to the case in hand, it is of service in showing how greatly our law makers have enlarged the objects and beneficiaries of these associations, and what safeguards they have thrown around its members and for the first time imposed penalties for the violation of this law. It appears to us too plain—beyond all argument, that while it may be and is entirely true that these corporations cannot, in this state, exercise any powers beyond those which our own laws confer upon them, it cannot be that by transcending their powers they have imposed upon themselves and the contracts

which they issue, the character which the law refuses to give them; not only refuses to give them, but expressly prohibits them from assuming. Moreover, every member of these associations enters into it with the distinct understanding that he is entering into, not a life insurance company but a fraternal beneficiary association. His obligation, which no court can interfere with or increase without impairing the obligation of the contract, is to pay assessments only when those assessments are levied for the purposes and within the power and purview of the association itself. He has contracted no others. If his society undertakes to enforce payment other than by way of assessments for the payment of benefits, as contemplated in its articles of organization, it is attempting something beyond its powers as a corporation, and with which the courts will interfere, and is exercising a power not granted to it by the state. It appears beyond question and controversy in this case that the only revenues of this defendant are derived from assessments upon its members for death losses accrued and occurring possibly for antemortem losses, provided for by a reserve fund and for dues, which Judge VALLIANT has said in the Vandiver case, "are practically assessments."

It is but a recital of familiar contemporary history to say that while these so-called benevolent associations, as they were called at that time, and as Judge VALLIANT notes in the Vandiver case, "were in existence long before 1879," in that year they claimed recognition by the two acts referred to by Judge VALLIANT in his opinion in the Vandiver case. It is, however, a fact of contemporary history with which that judge is doubtless familiar, that the one act was drafted by those interested in museums, art schools and the like, and with no thought to insurance. The other is the product of those interested in various fraternal organizations, granting death benefits to the families of its members. But the draftsmen of the insurance

revision never dreamed of such bodies being within the insurance laws of the state, further than if they attempted to do business committed by law to insurance companies, they forfeited their charter, as see State ex rel. Attorney General v. Merchants' Exchange Mutual Benevolent Society, supra. It was in the light of that decision that the thousands of our people who were interested and members of those bodies, demanded of our legislature exemption from the provisions of the insurance laws for their associations and contracts.

We have come to this conclusion without taking into consideration the interest of societies organized as fraternal beneficiary associations.

In the case of Baker v. Modern Woodmen of America, 140 Mo. App. 619, 121 S. W. 794, we took occasion to say (l. c. 633): "Organizations of like class of this defendant have been very kindly dealt with by our laws; very liberal provisions are made for them. Very many of our plain everyday people look to them for protection. These organizations should be very slow in insisting on rigid interpretations of their certificates and by-laws—more rigid than any so-called old-line companies are permitted to exact, in resisting and defeating the claims of those by whose small contributions the organization is kept alive." That was in a case in which the organization sought to defeat recovery on the ground that the member had lost membership although he had paid up all his dues, by having been convicted of a felony, for which he, with another, was indicted, which on appeal, a supersedeas bond being given, the conviction was set aside as to the co-defendant and the proceeding quashed as to the member of the organization, by reason of his death pending the appeal. During all the time, that is pending the appeal and after the conviction in the circuit court, the member had been recognized by the local lodge as in full fellowship and a member in good

standing.   We have had the case of an order attempting to defeat recovery because the member had been guilty of misrepresentation and breached the warranty, in that he had concealed the fact that within seven years prior to his joining the order he had consulted a physician.   The so-called consultation in that case consisted of meeting a friend, who was also the physician of the member, on the street and that physician casually remarking to his friend that "he looked bilious and had better take some calomel and soda."   This the organization attempted to say was a consultation which came within the warranties of the insured that he had not consulted a physician in the past seven years.   It is against these kinds of defenses, a defense as to matters that in no manner affected the risk, that we have expressed our disapproval.   The case at bar is entirely different and the breach of the covenant against suicide is of the very essence of the contract. Here each member has agreed with the other that if he commits suicide, that other shall not be called on to pay the loss occurring thereby.   Suicide was the act committed.   To hold to the judgment which was rendered in this case and award the administrator or beneficiaries the amount of the benefit certificate in the case of this man, who admittedly committed suicide, because the organization to which he belongs may possibly include among its beneficiaries a class not contemplated by our law, seems to us a violation of the contract between these members with each other. It does not seem right for us, as a court, to say that by going only that much beyond our laws as to place within the line of beneficiaries legal representatives and legatees, the association has been lifted out of the class to which it belongs and placed in another of which it has neither any of the statutory attributes nor to which it purports to belong and which under our laws it is affirmatively prohibited from entering by reason of the manner in which it conducts it businesss.   We

further are unable to see how we can give to its contracts, even if made outside of its authority, the force and dignity of such contracts as are lawful only when made by duly authorized life or accident insurance companies, authorized to do business in this state as such, the issuing of which or making of which contracts by any but a regular insurance company involves a violation of our statute and subjects the makers thereof to criminal prosecution.

No question of ultra vires arises over this certificate. It was issued within the chartered powers of the association. A question of ultra vires might arise, if under a judgment in favor of this administrator or any other claiming as beneficiary under the certificate, a member of the order should refuse to pay an assessment levied on him to meet it, or for failure to pay such assessment should be denied membership in the order, or, in the event that the officers of the defendant order undertook to pay such judgment out of any funds, reserve or otherwise, arising from assessments lawfully made. But no such question is before us.

If it be asked, what remedy there is against companies who insist on violating the law, we answer that it is not by legalizing those contracts but by punishing the makers of them criminally and excluding the association from the transaction of further business in this state, and preventing members who have agreed that suicide annuls their contracts, from reaping the benefits of membership. The certificates of these associations are required to be renewed annually; certainly the insurance department of our state, as illustrated in the Vandiver case, has shown itself vigilant and prompt in invoking the powers committed to it. Our courts have certainly shown no disposition to check that department in the proper exercise of the powers committed to it by the statute.

In the Westerman case, the point in judgment was the application to the society there involved of our

Ordelheide v. Modern Brotherhood of America.

non-forfeiture statute.   The court held it inapplicable. Judge GRAVES, in the Schmidt case, quotes Judge Fox as refraining from any decision on the suicide section in the Westerman case.   In the Schmidt case the point in decision was whether at the time of the issue of the membership certificate, the defendant was authorized to do business in this state.   The court held that it was not, and that having issued what was in law a life policy, it was subject to the laws relating to such contracts.

The foregoing was filed as the opinion and decision of the court.   As on further consideration the majority of the members of the court do not agree to it, I refile it as my own opinion, inasmuch as I dissent from the reasoning and the conclusions arrived at by my associates. I think the judgment of the circuit court should be reversed, as I am of the opinion that the decision of the majority of the court is in conflict with the decision of our Supreme Court in Loos' Guard. v. John Hancock Mut. Life Ins. Co., 41 Mo., 538, and Ewing v. Shannahan, 113 Mo. 188, 20 S. W. 1065, in holding that the term "legal representatives," as used by this defendant and as construed by its organic laws, includes the administrator, and as I am of the opinion that it is in conflict with the decision of the Supreme Court in Westerman v. Supreme Lodge Knights of Pythias, 186 Mo. 670, 94 S. W. 470, and with the principle underlying the decision of the Supreme Court in Schmidt v. Supreme Court United Order of Foresters, 228 Mo. 675,   129 S. W. 653, and in State ex rel. Supreme Lodge K. P. v. Vandiver, 213 Mo. 187, 111 S. W. 911, in construing the suicide section into contracts of companies authorized to do business in this state as fraternal beneficiary associations, as well as in conflict with the principles announced by our Supreme Court in other cases referred to in the body of my opinion.   I will add, that while I recognize as a rule of law, settled by the decisions of the Supreme Court of

the United States as well as by those of our own Supreme Court, that when a foreign corporation comes into a state to do business, its subjects itself to the the laws of that state and must conform thereto, I am unable to understand how an association authorized by the proper officers of the state to do business in this state as a fraternal beneficiary association can be held subject to the provisions of the suicide statute of our state, when that statute, in my opinion, is applicable solely to contracts of insurance issued by regular life or accident insurance companies, and I do not think our Supreme Court has ever so held, with that point before it in judgment. By reason of the conflict, as I think, with controlling decisions above referred to, I ask that the cause be certified to the Supreme Court for its final determination.